## Mercer-Lincoln Pine Knob Oil Company v. Pruitt, et ux.

(Decided March 4, 1921.)

### Appeal from Mercer Circuit Court.

1. Damages—Measure of Damages—Breach of Contract.—Where the measure of damages for the breach of a contract is determined and limited in the contract itself it is generally held error for the court to set up a different measure unless that fixed by the contract is unconscionable or the contract is obtained by fraud.

2. Mines and Minerals—Reversion of Lease.—Where in a contract relating to leases of oil land it was agreed that upon the failure of the lessee to comply with the contract the leases were to revert to the lessor, and the lessee abandoned the leases because oil was not found in paying quantities, the parties will be relegated to the remedy fixed in the contract, viz.: a reversion or reassignment of the leases.

3. Mines and Minerals—Breach of Lease Contract.—Under a provision in a contract that upon a breach thereof certain leases obtained by the lessor should revert to the latter, it is incumbent upon him to demand of the lessee a return or reassignment of the leases.

C. E. RANKIN for appellant.

PURYEAR & CLAY for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Appellant is a consolidation of the Pine Knob Oil & Gas Company and the Mercer-Lincoln Oil Company. In appellee's petition it was alleged that prior to said con-

solidation the Pine Knob Oil & Gas Company, and D. P. Weeks, its president, entered into a contract with appellee, G. B. Pruitt, whereby the latter was to procure for the company, and it agreed to purchase from him, oil and gas leases on not less than 2,000 acres of land in Lincoln county near the town of Moreland. The company agreed to develop the leases promptly and thoroughly and to do the first drilling and development upon the property of Pruitt and Welborn, operations to begin not later than July 1, 1919.

It was further alleged that a large number of leases were obtained and transferred to the company and accepted by it; that after procuring said leases the Pine Knob Company breached the contract and failed to develop the property of Pruitt or Welborn, or any of said leases and failed to put forth the proper effort to push the work of development as in the contract provided and failed and refused upon demand to return said leases to Pruitt.

The last clause of the contract, which is dated May 3, 1919, reads as follows:

"It is also agreed and understood that should party of the second part (Pine Knob Oil & Gas Co.) fail to comply with this contract said leases are to revert to party of the first part."

The answer put in issue the averments of the petition. In an amended petition, which was controverted of record, it was alleged that a reasonable development and operation of the premises required the sinking of a number of wells on each of the tracts of land, the cost of which would have been in excess of $5,000 and by reason of the failure of the company to properly develop said property appellees were damaged to that extent.

It will be unnecessary to refer to other issues raised by the pleadings. A jury returned a verdict in appellees' favor for $3,000, and it is to reverse the judgment entered pursuant thereto that this appeal has been prosecuted.

The lands of Pruitt and Welborn were included in the entire acreage upon which leases were secured and assigned to the company.

It is the contention of appellees that a proper development required appellant to drill from three to five wells on each tract, but as a matter of fact only one well was sunk and this resulted in a dry hole. The company did

some drilling on other leases in the neighborhood, but neither gas nor oil was found in paying quantities.

It is pleaded in the answer that having drilled five wells on and in the vicinity of the lease, at an expense of $7,000 and the experiment having disclosed no oil or gas in quantities sufficient to operate profitably the company determined to and did abandon the same.

In an amended answer the last clause of the contract, above referred to was relied on, and it was alleged that the measure of damages should be the reversion of the leases and that that provision represented the sum agreed upon as liquidated damages for the breach of the contract, and that such provision fixed and determined the recovery, if any, to which appellees were entitled.

In instructing the jury on the measure of damages the court said they could find such a sum in damages as they might believe from the evidence to be the reasonable, necessary cost of drilling wells sufficient to reasonably develop the property of Pruitt and Welborn.

On the question of a demand the evidence is conflicting. Weeks says Pruitt never made demand for the leases after the project was abandoned, but that he, on behalf of the company, offered to return them to Pruitt. Later he corrects this statement and says he told Pruitt the leases ought to be returned to the landowners and offered to reassign them to the proper parties but Pruitt was not willing that this be done. Pruitt denies that such offer was made.

The leases appear to have been in the usual form and provided for yearly rentals, payable quarterly in advance. These leases were alive at the time the suit was filed, and it is claimed by appellees they had at that time a substantial value, but at the time the judgment was entered all of said leases had lapsed by reason of the failure to pay the rentals as required.

Appellant contends it made a *bona fide* effort to test the property, and its development and operations on the Pruitt lease and in the immediate neighborhood were sufficient to show that oil and gas in paying quantities could not be found thereon and it was useless to make further development; but this is a disputed point, a settlement of which is not necessary to a decision of this case. We are satisfied the court was in error in holding the measure of damages was the cost of drilling additional wells.

Of particular moment is the consideration of the question as to the character of the contract, whether it is based upon a condition precedent which has never been performed or upon conditions subsequent that required affirmative action to create a forfeiture of the estate conveyed. In a condition precedent the title does not pass or vest until it is performed, while a condition subsequent operates by way of defeasance of a title that has once vested. The real test of whether the condition is of the one kind or the other is that of intention, and this is to be gathered from the context of the instrument construed in the light of those rules and principles applicable in such cases.

These leases were assigned and transferred to the company and as a part of the consideration for said assignments the company agreed to give first attention to Pruitt's lands. The language of the condition is inconsistent with the contention that the conditions are precedent. It is expressly provided that upon second party's failure to comply with the contract said leases were to revert to first party. A title that has never passed can not be said to revert. It would necessarily follow that this provision was intended to operate, if not complied with, as a ground of subsequent forfeiture of the estate conveyed and that performance need not precede the vesting of the title. Breach of a condition subsequent does not *per se* produce a reversion of the title. The estate continues in the grantee or contractee until the proper steps have been taken to effect a forfeiture and ordinarily this requires a re-entry or some act that may be considered as a lawful substitute therefor. And to effect a forfeiture there must be some affirmative, positive act which manifests the intention of the contractor to this end. Had appellees at or before the time suit was filed, or at any time during the life of the leases, made demand upon appellant for a reassignment or transfer of the leases which appellees had obtained, appellees would have been in an entirely different attitude from that in which they appear at the present time. For instance, where property has been conveyed to another, with a stipulation that the title shall revert to the grantor upon the failure of the grantee to perform certain specified conditions, and the grantor, upon breach, re-enters upon the property or does something equivalent thereto for the purpose of reclaiming the same pursuant to the terms of

the grant, in the absence of any equity preventing the legal effect of such facts, the title to such property will thereby become revested in the grantor as absolutely as it was before the conveyance was made. Maginnis v. Knickerbocker Ice Co., 112 Wis. 383, 88 N. W. 300, 69 L. R. A. 833; Rannels v. Rowe, 145 Fed. 296; 74 C. C. A. 376.

The proposition under discussion is analogous to that discussed in Raleigh v. Clarke, 114 Ky. 732, 71 S. W. 857. There the parties owned adjoining farms. Appellee, whose farm drained over that of appellant into a creek, agreed to construct and keep open a ditch over appellant's land to the creek, but he allowed the ditch to fill up, resulting in the overflow of appellant's land and damage to his crops. In a suit for damages appellant was held entitled to recover only the reasonable cost of opening the ditch and keeping it open, if by cleaning the ditch he could have avoided the damage. And so in John C. Lewis Co. v. Scott, 95 Ky. 484, 26 S. W. 192, 44 Am. St. Rep., 251, where a person employed under a contract to perform services for a stipulated time is wrongfully discharged before the expiration of that time, the measure of damages is the stipulated wages for the term less what he has earned or by reasonable diligence could have earned during said period. If a party entitled 'to the benefit of a contract can protect himself from a loss arising from a breach at a trifling expense or with reasonable exertion, he fails in social duty, where he fails so to do regardless of the increased amount of damages for which he may intend to hold the other contracting party liable.

As stated in Miller v. Trustees, etc., 7 Greenleaf Me. 51, 20 Am. Dec. 341:

"He who has it in his power to prevent an injury to his neighbor and does not exercise it, is often in a moral, if not a legal point of view, accountable for it."

In 17 C. J. 844, the text reads:

"The measure of damages is such a sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer, consistent with the idea of fair compensation, and with the duty upon the person injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within his reach."

On page 847, of the same volume, it is said that in case of the breach of a contract the measure is the amount

which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it has entailed.

Where the measure of damages for a breach of the contract is determined and limited in the contract itself it is generally held error for the court to set up a different measure, unless that fixed by the contract is unconscionable or the contract was obtained by fraud. Elliott on Contracts, sec. 2150. Neither of these exceptions is present in the instant case.

Here we have a case where the parties have agreed in consideration of the obtention of certain leases to do sufficient drilling upon said leases or some of them to develop the property in a fair and reasonable way, with the view of ascertaining whether oil or gas could be found thereon. Within the space of a few months appellant had conducted such operations as convinced it it was useless to expend further money to develop the territory, a fact which seems to have been promptly communicated to appellees, as the breach of the contract was properly alleged in the suit that was filed in September. Appellees then knew the breach and had they so desired they could have kept the leases alive by payment of the specified rentals. Mere non-action on their part was not sufficient. They were not required to do more than make a demand upon appellant for the return or reassignment of the leases. Only upon the failure or refusal of appellant to comply with this request could or would it be liable. Since the parties have expressly stipulated in their contract what the measure of damages should be for a breach thereof, viz., a reversion of the leases to the first party, and finding nothing unconscionable in this provision the parties will be relegated to the remedy they have agreed upon. Upon a retrial the court will submit to the jury the one issue of whether there was a demand for the return or reassignment of the leases or an offer on the part of appellant to return them and the failure and refusal on the part of either to comply with the request for or offer to return or reassign the leases.

For these reasons the judgment will be reversed for further proceedings consistent herewith.