## Smith v. City of Kuttawa, et al.

(Decided January 13, 1928.)

### Appeal from Lyon Circuit Court.

1. **Waters and Water Courses.**—Grantor conveying piscatory and other rights in lake to town retained ownership of lake subject to these rights and could make deed to water company of prop-

erty abutting on lake for purpose of erecting pumping station and right to take water from lake.

2. Municipal Corporations.—City may acquire or own property beyond its corporate limits for legitimate city purposes, but property must be acquired for "city purposes" which must be primarily for benefit, use, or convenience of city, as distinguished from that of public outside of it, and thing to be done must be within ordinary range of municipal action.

3. Municipal Corporations.—Town of Kuttawa, since it was not expressly denied such capacity, had capacity to acquire and own easements and rights in lake located beyond city limits.

4. Deeds.—Under deed referring to maintenance of dam as "condition precedent" to town's right to continued ownership in rights conveyed in lake, town was vested with rights subject to be divested if it failed to maintain dam, and condition was "condition subsequent," although called "condition precedent."

5. Deeds.—Even if town failed to maintain dam which was condition subsequent to town's continued ownership of rights in lake under deed, held, town did not lose rights vested in it by deed, where grantor or his heirs who inherited property after grantor's death did not re-enter upon property or reclaim rights granted by deed "for condition broken."

6. Deeds.—To effect forfeiture of deed for breach of condition subsequent there must be some affirmative positive act manifesting intention of grantor to that end, and to effect such a forfeiture a re-entry or some act which may be a lawful substitute therefor is ordinarily required.

7. Deeds.—Town, by accepting unconditional conveyance of park from heirs of one who devised park to town in unsigned will subject to surrender by town of rights it had in other property previously conveyed to town by him, did not divest itself of rights in property previously acquired so that town was never called upon to make election between park and property previously acquired.

8. Waters and Water Courses.—Where lake at time plaintiff bought property was then being, and for number of years had been, used by people of town, having unrecorded deed to rights in lake, indiscriminately, and plaintiff knew of this use, he was put on duty of inquiring into character of use and was not an "innocent purchaser for value without notice."

9. Adverse Possession.—Town did not have title by adverse possession to park, where use by people of town was not shown to have been continuous and exclusive for any period of time, and during times in question owners had exercised acts of dominion over park inconsistent with claim of title thereto in town.

10. Descent and Distribution.—Authority given to one heir by the other heirs of the estate to try to sell lots of estate did not carry with it any authority to give away property of estate to town for park.

11. Dedication.—Dedication is a matter of intention.

12. Dedication.—Placing of map in public place in town by one of heirs of estate, showing tract as park, was not dedication of tract as public park, where in prospectus accompanying map it was stated that tract belonged to owners of suburb until they elected to donate it to town as public park, and no conveyances were made on faith of map.

UTLEY & UTLEY for appellant.

C. C. MOLLOY and C. C. GRASSHAM for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In 1880 Hon. Charles Anderson, one-time Governor of the state of Ohio, was the owner of a large amount of land surrounding the town of Kuttawa which he had helped to found. It was then thought that this part of Kentucky, due to the presence of coal, iron, and other minerals, was destined for an industrial development comparable to that of the Pittsburgh district as we now have it, and the plans and designs of Governor Anderson for the town of Kuttawa and the surrounding country were exceedingly ambitious. At that time there was a road leading out from the westerly limits of Kuttawa which penetrated a considerable portion of Lyon county. This road paralleled the Cumberland river. About a half mile or so from the city limits this road ran through a low, marshy tract, crossing by means of a bridge a branch which ran down from the hillsides into the Cumberland river. This branch was fed by a number of springs. Governor Anderson, who owned all of the property surrounding this low spot and these springs, conceived the idea that by erecting a dam parallel to the Cumberland river across the marshy land he could thereby create a large body of water as a lake, which would make his own property very attractive and would be a place of resort for pleasure seekers. He accordingly erected a dam across the marshy place and put the road to which we have referred on top of this dam. He secured financial aid from the trustees of the town of Kuttawa in the erection of this dam, and in return for this financial aid and help he executed on the 19th day of July, 1880, a deed, the material parts of which are as follows:

"Know all men by these presents: That in consideration of an appropriation heretofore made by

the trustees of the town of Kuttawa in Lyon county for the preservation of the roadway over the waste-weirs for the water flowing from Lake Clough at their former level way one foot above the present level and of the due expenditure of the same at either or both of said waterweirs and of the proper maintenance of the same as a public highway to and from said town, I, the undersigned, Chas. Anderson, for myself and for my heirs and legal representatives in so far as the right and power within me lies, do hereby grant, assign and convey unto them the aforesaid trustees of Kuttawa for the benefit and enjoyment of the citizens and of such other classes of persons as the said board may by ordinance determine, all my private and peculiar rights of property or jurisdiction in and over the said wasteweirs roadway and of the water of the lake itself whether for fishing, boating, bathing, baptizing, procuring ice and the like purposes, and do furthermore authorize and empower the said board to the fullest lawful extent to pass from time to time, as they or their successors may discover the necessity or propriety thereof, all proper ordinances and rules as well for securing the said roadway at the said level as for the fit and decent government and police of Lake Clough aforesaid, and of its adjacent roads, and finally that the above grants of jurisdiction shall endure so long as the said roadway shall be properly maintained as a condition precedent if even forever.''

This deed was duly copied into the minutes of the board of trustees of the town of Kuttawa, but was not recorded in the office of the county clerk, nor has it ever been. Although it was lost long prior to the institution of this litigation, its execution and delivery were indisputably established. The evidence shows that from 1880 to the present time the town has, from time to time, made appropriations for the maintenance of the dam referred to and which created the body of water named ''Lake Clough'' by Governor Anderson. But it also shows that the county of Lyon has likewise made appropriations for this dam, and that the citizens of Kuttawa and of the county have donated a good deal of labor and material in the maintenance of this dam, and that Governor

Anderson, and, after him, his heirs have also spent a lot of money in its maintenance. It cannot be fairly said from this record that any one person or that the town alone has maintained this dam. It is practically conceded that, from the time of its erection to the present day, the citizens of the town of Kuttawa as well as the residents of the county of Lyon, and even elsewhere, have made use of Lake Clough openly and notoriously according to the rights granted in the deed copied above. But whether this was done as a matter of right or as a matter of permission and acquiescence on the part of the Andersons is in dispute, the evidence preponderating to the side that it was as a matter of right. The lower court so held, and in this finding of fact we acquiesce.

In the early '90's. Governor Anderson deeded to a water company certain properties abutting on Lake Clough for the purpose of erecting a pumping station for a waterworks, and also the right to take water from Lake Clough. This deed was not inconsistent with the one he had made to the town of Kuttawa in 1880 as by that deed he did not vest the fee of the lake in the town of Kuttawa, but only the piscatory and other rights set out therein. Subject to these rights, he retained the ownership of the lake and therefore had a perfect right to make the deed he did to the water company. Governor Anderson died in 1895. At the time of his death he was engaged in preparing a very elaborate will wherein he undertook with most minute directions to direct the disposition of his estate and especially his real property. Death overtook him before he was able to complete and sign this will, and it is referred to in this record, as "the unsigned will of Governor Anderson." His heirs, who were his children, agreed, among themselves, to carry out as far as possible the directions of Governor Anderson, as set out in this unsigned will. Accordingly they deeded to the town of Kuttawa a large tract of land consisting of some 195 acres more or less called "Vista Ridge Park," which Governor Anderson had in his unsigned will attempted to devise to the town. They attached to this conveyance, however, certain restrictions governing the use, management, and government of the park not found in the directions incorporated in the unsigned will of Governor Anderson. In his unsigned will. Governor Anderson provided for the disposition of the

property he owned around Lake Clough. He directed that this property be divided in large suburban tracts and sold as such. Among other things, he provided in this unsigned will that:

"Lake Clough itself and its shores and all its privileges of prospect, boating, fishing, etc., together with its enclosed peninsular grove extending as far back as to the road crossing it from the Glenmary to and around the Filley Spring and lake and together with all of the Glenmary itself, being that entire meadow or flat which winds out from the western lobe of the lake and with all the open and free roads to be hereafter established by my executors throughout this division No. 4 is hereby distinctly and especially dedicated and granted to the general free and equal uses and enjoyments of all the persons and families who may hereafter purchase and occupy as houses, the above-described country seats, which compose this tract, and that the said purchasers are hereby empowered and authorized by me to the extent of my own rights in such a delegation of powers to choose proper trustees and managers in order to prescribe rules or by-laws to preserve those franchises, to keep peace, quiet on and around the premises, to extend any part or parts of their own privileges either to the general public or to particular individuals therefrom and finally at such time and upon such conditions as may be mutually acceptable to a majority of themselves and of the trustees of the corporation of Kuttawa they may annex all this territory and properties of division No. 4 for its better or stronger government or police to that corporation, but in either case whether of its remaining under a separate or suburban government or of its annexation of Kuttawa, it must always be held as distinctly subject to the franchise of perfectly free right of travel and of lawful government by the general public upon both of the county roads bounding the lake upon two sides and subject also to the street alone."

About the year 1897 the town of Kuttawa, at the instance of Col. Latham Anderson, Governor Anderson's son and one of his heirs, extended its limits so as to include Vista Ridge Park and the waters of Lake Clough.

Abutting on the waters of Lake Clough is a large tract of land containing some 40 acres, more or less, called in this record "Lake Clough Park." This tract was left outside the corporate limits. Col. Latham Anderson was at this time engaged in laying out, mapping and platting the properties of the Anderson estate, looking towards a sale of them. The record shows that Col. Anderson was somewhat visionary, and the other heirs seemed more to have tolerated than authorized his actions. Certain deeds were exchanged between the Anderson heirs about this time, which deeds were recorded in the office of the county clerk, and to them was appended a map which likewise was copied in the clerk's records. A few copies of this map were made, and one or two were hung in certain public places in the town. Col. Anderson colored the map recorded in the office of the county clerk and likewise colored the maps hung in the public places referred to. One color used on these maps was green and the legend at the bottom of the maps recited that those portions colored green were public parks. The land surrounding Lake Clough and called on the map "Lake Clough Park" was colored green, as were also other parks admittedly public parks, and also a reservation called "Kuttawa Springs Park, Anderson estate." The city does not claim that Kuttawa Springs Park is a public park and says its reason for not claiming this portion is that, although it is colored green, the expression "Anderson estate" shows that it was not dedicated as a public park. In a prospectus issued later, called a "prodrome prospectus," Col. Anderson stated that Lake Clough Park belonged to the owners of the suburb until they elected to devote it to the town as a public park. The evidence is conflicting as to whether or not sales of property in the town of Kuttawa were thereafter made on the faith of the maps hung in the public places. The evidence shows, however, that the citizens of Kuttawa and Lyon county made use of Lake Clough Park from time to time, but whether as a matter of right or not the evidence is in conflict. The evidence, however, also shows that the Anderson estate has never ceased to exercise acts of ownership over Lake Clough Park, such as cutting timber and in other respects.

Shortly prior to 1920 E. D. Marshall became the owner of the interest of one of the heirs of the Anderson estate in the realty belonging to that estate. He thereupon brought suit for a sale and division, under section 490 of the Civil Code. The attorney for the appellee

town of Kuttawa in this action was one of the attorneys, in this suit for a sale and division. Part of the property sold was Lake Clough and Lake Clough Park, and the attorneys, including the present attorney for the town, in preparing the judgment in that action recited that the property was to be sold "subject to the unsigned will of Governor Anderson." At the commissioner's sale held pursuant to this judgment, Mr. Skinner bought in a number of tracts of land, including Lake Clough and Lake Clough Park. He bought Lake Clough and Lake Clough Park solely for the benefit of the appellant Smith and certain others whom Smith later bought out. Mr. Malloy, the attorney for the appellee town of Kuttawa, claims that he warned Smith prior to the sale that the citizens of Kuttawa undoubtedly owned Lake Clough and maybe had a right to Lake Clough Park. Smith denies this, and says that the only warning he had was as to the probable rights of others under the unsigned will of Governor Anderson. He further says that Mr. Malloy after the sale undertook to buy for himself and others Lake Clough and Lake Clough Park. Skinner conveyed the property he had bought for Smith and others at the commissioner's sale to Smith and his co-owners by a deed of special warranty for a cash consideration and notes secured by a lien. Later, Smith bought out his co-owners. One of the notes falling due, Smith brought this action on the covenant of special warranty against the Anderson heirs for a recoupment on the ground that the title conveyed to him was defective in that the town of Kuttawa was making some claim to Lake Clough and Lake Clough Park.

We need not inquire into the merits of this suit by Smith against the Anderson heirs, because by the dismissal in this court of Smith's appeal against the Anderson heirs, in whose favor the judgment on this branch of the case in the lower court ran, this suit now resolves itself down solely to a contest between Smith and the town of Kuttawa, and we may treat this case as though Smith and the town of Kuttawa were originally the only antagonists. Kuttawa answered, claiming ownership in Lake Clough and in Lake Clough Park. Pleadings duly made up the issues and on final submission after elaborate preparation the court adjudged to the town of Kuttawa the rights vested in it by the deed of Governor Anderson in 1880, and no further. From this judgment Smith appeals, and the town has prosecuted a cross-ap-

peal claiming ownership in Lake Clough Park. If the town had capacity in 1880 to take under the deed of Governor Anderson the rights thereby conveyed by him, such deed vested in the town the rights adjudged them by the court. The only reason suggested why the city had no power to take such a conveyance is that it was a conveyance of an easement or rights in property located beyond the city limits. The question whether a city has the power, where such power has not been expressly withheld from it, to own property for municipal purposes located beyond the corporate limits of the town has never been presented to this court before for decision. The authorities in other states have divided upon the proposition.

As pointed out in McQuillin on Municipal Corporations, section 1108, where may be found a collection of these authorities, those which deny a municipality any such power have, no doubt, been influenced to some extent by a statement to that effect appearing in some of the earlier editions of Dillon on Municipal Corporations. Yet it was the same eminent author, who, appearing as counsel in the case of In re Mayor, etc., of New York, 99 N. Y. 570, 2 N. E. 642, succeeded in establishing the contrary doctrine in that case. In approaching the question, we should bear in mind the distinction between the right to acquire property beyond the corporate limits and the power to exercise the rights of sovereignty over it. Such a distinction underlies the opinion of this court in the case of Rieser v. Ward, 193 Ky. 368, 236 S. W. 255, wherein we held that, although a municipality may have power to own a park and a parkway system outside the corporate limits (the power was expressly granted the city, as the opinion says), jurisdiction to try offenses committed on such property could not be vested in the police court of such municipality.

Eliminating, then, the matter of the exercise of rights of sovereignty, since it is not present in this case, we see no good reason why a city may not acquire or own property beyond its corporate limits for legitimate city purposes. The necessities of an adequate and pure source of water supply, of a remote situation of pesthouses, of large tracts of land for park purposes acquired when land can be acquired in a large tract and before the city has built up to, around, and upon it, of suitable places for incinerators and garbage disposal, of farms for the penal and charitable institutions, of hospitals for tubercular patients and homes for incurables—

all dictate the reasonableness of the rule allowing a city to own property for such purposes beyond the corporate limits. Indeed, in a great many instances, a city would be thwarted in a legitimate exercise of its municipal functions if it could not acquire property therefor beyond the corporate limits. Large tracts of land, for park purposes especially, can rarely be obtained within the corporate limits. Of course, this rule has its limitations. The property acquired must be for a city purpose. As said in the case of In re Mayor, etc., of New York, supra:

"While, as we said in one of the cases cited, it is impossible to formulate a perfect definition of what is meant by a city purpose, yet two characteristics it must have. The purpose must be primarily the benefit, use or convenience of the city as distinguished from that of the public outside of it, although they may be incidentally benefited, and the work be of such a character as to show plainly the predominance of that purpose. And then the thing to be done must be within the ordinary range of municipal action. Acquiring and maintaining parks is within that range. Acquiring them so near to the city as to make them convenient and accessible and likely to be overtaken and surrounded by the city's growth, satisfies the first condition, while a park in the Adirondacks or at Niagara would not satisfy it at all, but would clearly indicate and conclusively prove an underlying purpose different from the city's use and convenience, and of which that use and convenience was but a pretext and cover. Where the enterprise is of such a character that it may be justly so described, and breeds in the impartial mind a conviction that the use and benefit of the city is but a pretext disguising some foreign and ulterior end, we may easily deny to it the attributes of a city purpose. But the case must be a clear one, and so clear as to justify a reversal of the legislative judgment manifested by the enactment."

In Schneider v. Menasha, 118 Wis. 298, 95 N. W. 94, 99 Am. St. Rep. 996, the court on this point said:

"In testing the question of whether a municipality has exceeded its corporate authority in going outside its boundaries in any given case, we must first determine the purpose in view. If that be found to be the exercise of police authority, or

authority to govern in any sense, the conclusion must be that the end does not justify the act. If it be found to be the mere exercise of a business function, the conclusion must be that the mere act of going beyond the boundary does not necessarily involve excess of power. In determining whether corporate authority has been exceeded by reason of distance from the city limits the act in question reaches, we must solve that by an appeal to reason and common sense, keeping in mind that municipal corporations, in their business matters, are governed by very much the same rules as private corporations. Washburn Co. v. Thompson, 99 Wis. 585, 75 N. W. 309. It comes down in each case to the exercise of mere human judgment. That being the case, there must necessarily be a wide range within which municipal officers, acting in good faith, may go, and not be guilty of such an abuse of power as to render their acts, as acts of the city, void. As suggested in the New York case, they may go to the point where to go further would indicate some ulterior motive—indicate that a legitimate city purpose was no longer in view. That would be true whether the act done were performed within or without the corporate limits. Manifestly, in purchasing real estate for the convenience of a city, the element of convenience will enter into the matter, whether the purchase be made on one side or the other of the boundary line of the corporation. If the agents of the city should go so far from its boundary to obtain land for its use that the element of convenience would be no longer apparent, there would undoubtedly be such an abuse of authority as to render the act void.''

In the present case, the property rights or easement deeded to the city by Governor Anderson, being in the nature of a park purpose, was undoubtedly a legitimate municipal purpose, and, being located so near to the corporate limits, there could be no ulterior motive in its acquisition. We are of the opinion that the town of Kuttawa, since it was not expressly denied such capacity, had the capacity to acquire and own the easements and rights granted to it by Governor Anderson by his deed of 1880.

In this deed of Governor Anderson, he refers to the maintenance of the dam as ''a condition precedent'' to the town's right to continued ownership in the rights he

had conveyed it. That he meant a condition subsequent is, of course, too obvious for argument. From the deed it is plain that he wanted the town to have the ownership of the rights of the lake he had deeded it as long as the town kept up the improvement. He had vested the town with these rights, subject to being divested if it failed to maintain the dam. Such a condition was a condition subsequent, no matter what he called it. Therefore, even if the town did fail to maintain the dam, yet it did not lose the rights vested in it by the deed of Governor Anderson, for the record does. not show that Governor Anderson, or his heirs, who inherited his property after his death, ever re-entered upon or reclaimed the rights granted by the deed "for condition broken." To effect a forfeiture for breach of a condition subsequent, there must be some affirmative positive act manifesting the intention of the grantor to that end. To effect such a forfeiture, a re-entry or some act which may be a lawful substitute therefor is ordinarily required. Mercer-Lincoln, Pineknob Oil Co. v. Pruitt, 191 Ky. 207, 229 S. W. 374; Hale v. Elkhorn Coal Corporation, 206 Ky. 629, 268 S. W. 304. The record here shows that the citizens of Kuttawa have from the date of the deed in 1880 to the present time enjoyed without interruption, and without objection on the part of Governor Anderson or his estate, the rights granted them by the deed of 1880. There has never been any reclamation of those rights for any condition broken. It therefore follows that the town has never been divested of its rights under the 1880 deed by any alleged failure on its part to maintain the dam.

But it is argued that, by accepting the deed to Vista Ridge Park, the town elected to take that property and to surrender its rights under the 1880 deed. The basis for this argument rests on the claim that, although the will of Governor Anderson in which he devised Vista Ridge Park to the town and then made a disposition of Lake Clough and Lake Clough Park inconsistent with the rights deeded to the town by him in 1880 was never effective because unsigned, yet, as the heirs carried out the wishes of Governor Anderson as expressed in his will by making deeds to those designated as devisees in this will, the town must be held as though it took directly under a valid will of Governor Anderson. It is, no doubt, quite true that the heirs of Governor Anderson were moved to make the deeds they did by a desire to comply with his wishes as expressed in his will. But these heirs in mak-

ing these deeds did not require the grantees, as a condition of the grant or otherwise, to accede to the will of Governor Anderson. Nothing is said in the deed of Vista Ridge Park about the conveyance being made subject to a surrender by the town of any rights it had inconsistent with the expressed but ineffective desires of Governor Anderson as set out in his unsigned will. These heirs were free to make the deed to Vista Ridge Park or not just as they saw fit. If they chose to make it without requiring a surrender of any other rights the town had, they could do so. The town did not take Vista Ridge Park under the will, but under the deed from the heirs. These heirs exacted no agreement from the town in making the deed. It was a voluntary act on their part. It follows, then, that the town was never called upon to make an election, and that, by accepting the conveyance of Vista Ridge Park unfettered by any condition that it surrender its rights acquired by the deed of 1880, the town did not divest itself of those rights. This being true, it is unnecessary to inquire into the question whether the town trustees had the authority to make an election for the town since they were never called upon to make such an election.

Appellant lastly argues that since the 1880 deed was never put to record prior to his purchase of Lake Clough and Lake Clough Park, he is not charged with constructive notice of it, and that as he bought without actual notice of the town's claim he is an innocent purchaser for value without notice and takes the property free from the town's claims. However, the evidence is in conflict as to whether he did have actual notice or not of the town's claims. The chancellor found that he did, and the case on this phase could well be rested on this finding as we cannot say that the evidence at all preponderates to the contrary. But beyond this, the evidence shows that Lake Clough at the time appellant bought the property here in question was then being, and for a number of years had been, used by the people of the town indiscriminately. Smith knew of this use, and this put on him the duty of inquiring into the character of this use. See 20 R. C. L. 346 et seq. Cf. Stone v. Keith, 218 Ky. 11, 290 S. W. 1042. Any such inquiry on his part would have disclosed that there was at least a dispute about whether the people of the town were using this lake as a matter of right or under permission from the Anderson estate.

Charged with the notice of this dispute, appellant then bought the land with the risk that if the dispute be decided in favor of the town, he then held the property subject to the town's rights in it. Cf. Louisville Chair & Furniture Co. v. Otter, et al., 219 Ky. 757, 294 S. W. 483. It results, therefore, that appellant cannot defeat the appellee's claims herein by the plea of "innocent purchase for value without notice." On the original appeal, then, we are convinced that the judgment of the lower court is correct, and it is affirmed.

The appellee, by its cross-appeal, is insisting that it is entitled to Lake Clough Park in addition to the rights it acquired under the 1880 deed, and it rests this claim on two grounds—first, adverse possession; and, second, a dedication. As to the first, although the evidence does show some use of Lake Clough Park as a park by the people of the town, such use is not shown to have been continuous and exclusive for any period of time. During all the times here in question, the Anderson estate has exercised acts of dominion over the Lake Clough Park inconsistent with a claim of title thereto in the town. So its first claim must fall. As to the second claim, it rests on a map of the Anderson estate made about the year 1900 by Col. Latham Anderson, one of the Anderson heirs, a few copies of which were hung in various public places in the town of Kuttawa. Certain tracts on this map, including the area known as Lake Clough Park, were colored green and the map and its copies bear the legend, "Green shows public parks." There is a dispute as to whether conveyances in the town of Kuttawa, a large part of which belonged to the Anderson estate and which had been laid off into lots on the map we have mentioned, were made on the faith of these maps or not. The Anderson heirs, Col. Latham Anderson now being dead, claim that no conveyances were made on the faith of this map. They disclaim all responsibility for the making or coloring of the map. It seems that Col. Anderson did get permission from his co-owners of the property to try to sell the property, and to this end he made the map and its copies in question. In the prospectus which accompanied this map and which was called a "prodrome prospectus," he mentioned the various parks on his map. Referring to Lake Clough Park, he said:

"This includes Lake Clough Park of 38.35 acres, which, as explained in the prospectus, belongs to the

owners of the suburb till they elect to donate it to the town as a public park.''

This statement bears out the contention of the Anderson heirs that Col. Latham Anderson never intended to dedicate Lake Clough as a public park and that if he did, he had no authority to do so. It is true that they gave Col. Anderson permission to try to sell the lots of the estate, but such authority did not carry with it any authority to give away any property of the estate. Col. Anderson recognized his lack of authority, for in his prospectus he does not claim that he had any authority to dedicate Lake Clough as a public park. Indeed, he says that it is not such and will not be such until the owners of the suburbs ''donate it as such.'' It is settled that dedication is a matter of intention. The map and prospectus were all part of one scheme and transaction. They explain and supplement each other. Taking them together, we find a clear disclaimer of any intention to dedicate Lake Clough as a public park and no further than as a park for the benefit of the owners of the suburbs. We might add in passing that this was Governor Anderson's plan as set out in his unsigned will. Nor can we say that the heirs are estopped to deny a dedication by the fact that conveyances of town lots in Kuttawa have been made on the faith of these maps and on the faith of Lake Clough being a public park because colored green thereon. There was a heated dispute in the evidence as to whether any conveyance had been made on the faith of Lake Clough being a public park, and, as the chancellor found necessarily that none had been so made, we cannot say the evidence is contrary to his finding. It follows that the claim to Lake Clough Park so far as it rests on a dedication must also fall.

We are therefore also convinced that, on the cross-appeal, the judgment is likewise correct, and it is affirmed.

Judgment affirmed on both original and cross appeal.