### CHRISMAN et al. v. CUMBERLAND COACH LINES et al.

Court of Appeals of Kentucky.

June 13, 1952.

G. M. Castle, Harlan, for appellants.

Joseph J. Leary, Elmer Gaines Davis, Smith, Reed & Leary, Frankfort, James C. Brock, Harlan, for appellees.

CLAY, Commissioner.

This is a submitted controversy under section 637 of the Civil Code of Practice. The question presented is whether or not the City of Cumberland may acquire, own and operate a bus system by the issuance of revenue bonds under the provisions of Chapter 58, Kentucky Revised Statutes. The Chancellor approved the proposal.

Cumberland, a city of the fourth class, is located on U. S. Highway 119 between Harlan and Whitesburg. Adjacent and adjoining the city are the unincorporated settlements of Lynch and Benham. The composite area forms a single community of approximately 16,000 to 18,000 people. Coal mining is the prominent industry, and the local transportation system plays an important part in the life and work of the community.

For more than 15 years Cumberland Coach Lines, a private corporation, has operated a public transportation system in and through Cumberland, Lynch and Benham. It also furnishes a service to and from Whitesburg and Harlan, each approximately 22 miles from Cumberland.

Like so many other businesses (and individuals), the bus company's ability to operate at a fair profit is being threatened by increasing federal tax burdens, and it is willing to sell out to the city. The latter visualizes that because of tax exemptions it may be able to manage the system more economically for the benefit of its citizens. Whether or not this is simply a mirage, we express no opinion.

In 1946 the legislature enacted Chapter 58 of the Kentucky Revised Statutes. KRS 58.020 provides in part:

> "A governmental agency acting separately or jointly with one or more of any such agency, may acquire, construct, maintain, add to and improve any public project as defined in KRS 58.010, which public project may be

located within or without or partly within and partly without the territorial limits of such governmental agency or agencies, * * *."

KRS 58.010(1) provides:

"'Public project' means any lands, buildings or structures, works or facilities suitable for and intended for use as public property for public purposes or suitable for and intended for use in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works or facilities, and shall also include existing lands, buildings, structures, works and facilities, as well as improvements or additions to any such lands, buildings, structures, works or facilities."

It is shown by the record that the entire economy of the City of Cumberland, as well as that of the adjoining communities, is closely interwoven with the mining industry. The local transportation system furnishes a necessary service in transporting persons to and from their places of work. The livelihood and the living conditions of a substantial number of the city's citizens are dependent upon this facility. It certainly advances the public welfare, and its public nature has long been recognized by the Commonwealth in subjecting it to regulation through the Department of Motor Transportation.

The legislature has heretofore authorized a city to operate a street omnibus system. KRS 96.189. This statute relates only to third class cities, but indicates a legislative recognition of the fact that such a facility is within the class of those public utilities a municipality may properly acquire and operate.

In Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80, while another statute was principally involved, we discussed the factors which enter into the determination of whether or not a particular project is truly public in nature. We said, 313 Ky. at page 472, 232 S.W.2d at page 82:

"The legislative determination of what is a public purpose will not be interfered with by the courts unless the judicial mind conceives it to be without reasonable relation to the public interest or welfare and to be without the scope of legitimate government."

We think there can be no doubt that the legislature would have had power and authority to specifically designate a local bus system as one of the public projects which might lawfully be acquired by a governmental agency. Our question then is simply whether or not the definitive language used in KRS 58.010(1) manifests a legislative intent to include this type of enterprise within the scope of the statute.

■ A number of cases have been cited wherein we have construed a "public project" to embrace auditoriums, swimming pools, gymnasiums, water works, sewers, garbage incinerators, and drainage facilities. It might be said these decisions are not controlling because the facilities acquired were of a class peculiarly associated with and primarily designed to promote the general public welfare. In a sense, however, the local transportation system in the City of Cumberland might be more important to the life of the community than certain preeminently public projects, such as auditoriums or parks. While common carrier transportation is a proprietary enterprise, it is certainly "intended for use in the promotion of the * * * public welfare."

■ It might be suggested that all activities would fall within this category because to succeed they must somehow serve and benefit the public. However, the determining factors would seem to be the predominance of the public purpose, the close relationship to the public welfare, and the capacity of the city to conduct the enterprise within the scope of legitimate government.

■ The facility which the City of Cumberland proposes to acquire is a common carrier. Its predominant purpose of public service is shown by the fact that it is required to furnish transportation to all with-

out discrimination, and is subject to strict regulation and control by the state. The record shows that this service is closely related to the public welfare in the City of Cumberland, and it is the type of enterprise which lends itself to governmental operation. We therefore conclude that a city bus transportation system falls within the definition of "public project" as set forth in KRS 58.010(1).

■ The point is made that this facility is not truly a city system, but one which has an extended operation in surrounding territory. Prior to the enactment of Chapter 58 in 1946, we had held that a city-owned utility service could not be rendered beyond the corporate limits. See Smith v. City of Raceland, 258 Ky. 671, 80 S.W.2d 827. However, KRS 58.020, heretofore quoted, specifically states that the public project may be located "without the territorial limits" of the governmental agency involved.

It appears from the record that the facilities in the City of Cumberland are closely integrated with the rest of the system, and the entire service, even to Harlan and Whitesburg, contributes to the public welfare of the city's inhabitants. The operations beyond its limits are necessary incidents of the principal public project, and as such, may be acquired and maintained as a part thereof. See Smith v. City of Kuttawa, 222 Ky. 569, 1 S.W.2d 979. In closing, we will quote from the excellent opinion of the Circuit Judge Astor Hogg who decided the case in the court below:

"In view of the economic importance of the operation of the bus lines, which the city proposes to purchase, own and operate, to the inhabitants and taxpayers of the city, and considering the present broad concept of the scope of activities in which cities have been authorized to engage as having a public purpose, and considering the intent and purpose of the provisions of chapter 58 KRS, this Court is of the opinion that the contract of purchase is authorized under the provisions of chapter 58 which permit a governmental agency to acquire and maintain a public project as therein defined."

The judgment is affirmed.

LATIMER, Justice (dissenting).

I respectfully dissent on two grounds.

In my opinion the definition of "public project" in KRS 58.010(1) does not manifest a legislative intention to include such facilities as a transportation system. The very generality of the language requires a consideration of the type of public project heretofore commonly and traditionally regarded as subject to public acquisition and operation. A bus system, although it serves the public and is subject to governmental regulations, does not have such characteristics as to bring it within this category. In the Faulconer case (Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80), we recognized the right of a city to acquire an industrial building; but it was only because the legislature in KRS 103.210 had specifically labelled such a plant as a public enterprise.

The cases heretofore decided approving the acquisition of "public projects" involved projects such as parks, auditoriums, gymnasiums, swimming pools, water works, sewers, garbage incinerators, and drainage facilities. These clearly have a very close relationship to public health and welfare, and traditionally lend themselves best to governmental operation. A transportation system hardly falls in this class. I do not mean to say that the legislature could not declare such an enterprise a public one, but having failed to do so, I am unwilling to construe the legislative intent as extending the concept of a public project to any and everything which might further public convenience.

If the reasoning above is unsound, and a city transportation system is a public project, certainly its operations should be limited by the territorial boundaries of the city. Apparently the major portion of the operations of the Cumberland Coach Lines are outside of the city of Cumberland. In substance we have an inter-city operation which extends to Whitesburg on one side

and Harlan on the other. Is this a public project insofar as the Cumberland city public is concerned? It seems a dangerous authorization to permit a city to engage in a business which, even though public in nature, extends appreciably beyond its boundaries. If Cumberland may operate a bus line from that city to Harlan, why might it not also continue the line to Pineville, or Corbin, or Danville or Louisville? Why might it not acquire the L. & N. Railroad, upon which the very life of the city depends? Surely the definition of "public project", insofar as it relates to a municipality, must refer to facilities within that governmental subdivision, or if outside those limits, so closely related and integrated with such local facility that the whole is actually a city public project rather than a general public project operated by a city.

For the reasons given, I think the right of the city of Cumberland to acquire this facility should be denied.

STEWART and MILLIKEN, JJ., join me in this dissent.