**Iren NORVELL et al., Appellants,**

**v.**

**The CITY OF DANVILLE, Junction City, and Fram Corporation, Appellees.**

Court of Appeals of Kentucky.

March 23, 1962.

Donald D. Harkins, James G. Begley, Begley & Harkins, Danville, for appellant.

Wesley Gilmer, Jr., Danville, Franklin P. Hays, Skaggs, Hays & Fahey, Louisville, Jackson D. Guerrant, Danville, Richard Jackson, East Providence, R. I., William B. Gess, Lexington, for appellees.

STEWART, Chief Justice.

The council of the City of Danville, a city of the third class situated in Boyle County, proposes by ordinance to issue and sell $500,000 of industrial revenue bonds under KRS 103.200 to 103.285, inclusive. The proceeds derived therefrom will be used to acquire a site and construct thereon an industrial factory building which Fram Corporation has agreed to lease for a period of 20 years for rentals sufficient in amount to amortize the principal and interest on the bonds and also pay the maintenance and depreciation costs. The proposed location of the plant is within the corporate limits of Junction City, a city of the fifth class located in Boyle County about 5 miles from Danville.

This suit for a declaration of rights was brought in a representative capacity by appellants, Iren and Margaret Norvell, as citizens, taxpayers and residents of Danville, against the City of Danville, Junction City and Fram Corporation (hereinafter referred to as "Fram"). The trial court held on the three points placed in issue:

(a) The City of Danville has the power under the statute to issue industrial bonds to acquire industrial property within the corporate limits of another city for lease to a private corporation.

(b) The proposal will not constitute a lending of credit by the City of Danville to either a private corporation or another municipal corporation, as prohibited by Section 179 of the Constitution of Kentucky.

(c) There is sufficient unemployment in Danville and the surrounding area to render this proposal a public project.

On the question of whether one city has the authority to obtain title to and lease an industrial building to a private corporation in another city, pursuant to KRS 103.200 through 103.285, we must look to the statute itself, particularly to the provisions of KRS 103.210 which read:

"In order to promote the reconversion to peace-time economy, to relieve the conditions of unemployment, to aid in the rehabilitation of returning veterans and to encourage the increase of industry in this state, any city may borrow money and issue negotiable bonds for the purpose of defraying the cost of acquiring any industrial building, either by purchase or construction, but only after an ordinance has been adopted by the legislative body of the city specifying the proposed undertaking, the amount of bonds to be issued, and the maximum rate of interest the bonds are to bear. The ordinance shall further provide that the industrial building is to be acquired pursuant to the provisions of KRS 103.200 to 103.280."

Appellants argue that the City of Danville has neither express nor implied power to acquire property for industrial use within the corporate limits of another municipality, because they contend it was shown there are large acreages suitable for industrial development located in certain unincorporated areas of Boyle County and so contiguous to Danville's municipal boundaries as to be susceptible to annexation by the city.

Appellees point to the evidence which discloses that only in Junction City do there exist all the factors necessary for a plant site suitable to the proposed lessee, Fram, i. e., service by two railroads, good public highways, and all the utilities required by Fram. The various rural tracts suggested by appellants has one or more of these characteristics but not all. From this evidence, it may be taken that Junction City affords the only site which adequately fits the needs of Fram. Also it may be added, as indicated by the record, that Fram already leases a building in Junction City and plans

to continue the use of this structure, plus enlarging its operation on the tract the City of Danville proposes to furnish it.

Appellants next maintain that even a case of stark necessity does not inexorably imply that Danville has the authority to own land in Junction City, for it was held in Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232, that two municipal corporations cannot have jurisdiction and control at the same time over the same population and territory and exercise like or similar powers within the same boundaries.

However, in Smith v. City of Kuttawa, 222 Ky. 569, 1 S.W.2d 979, this Court specifically decided that a city may obtain, or hold in fee, property beyond its corporate limits. This decision antedated the enactment of KRS 103.200 through 103.285. There this statement was made in approaching the question: "* * * we should bear in mind the distinction between the right to acquire property beyond the corporate limits and the power to exercise the rights of sovereignty over it." The opinion then went on to make it clear that the attributes of sovereignty do not in any wise accompany the mere *ownership* of property acquired by a city in a proprietary capacity for municipal use outside its boundaries. The central idea conveyed by Smith v. City of Kuttawa, supra, is that a municipality should have the same right to become a property owner as an individual beyond the confines of its limits, if it is not prohibited from doing so and if it is expedient for the interests of its inhabitants to do so.

There is no Kentucky statute which forbids one city from becoming a property owner in another city for reasons of a needful nature. In 10 McQuillin, Municipal Corporations (3d ed.), sec. 28.05, it is stated that although earlier rulings were to the contrary the weight of authority, as well as the better reasoning, is that a city. where not expressly prohibited, may purchase real estate outside its corporate limits for legitimate municipal purposes. That text also states that it is "well to bear in mind the distinction between the right to acquire property and the rights of sovereignty over such property." It points out, too, it has been held that a city has general power to buy land outside its boundaries for a public park, a recreation area, a stone quarry, a gravel pit, a cemetery, a pest house, a water supply and the like.

This Court in the recent case of Bennett v. City of Mayfield, Ky., 323 S.W.2d 573, wherein the city proposed to issue revenue bonds for the acquisition of a site and the construction of an industrial plant thereon, held that this plant could be located beyond the city's corporate limits. In Chrisman v. Cumberland Coach Lines, Ky., 249 S.W.2d 782, the City of Cumberland proposed to acquire, own and operate a bus system by the issuance of revenue bonds under the provisions of KRS Chapter 58. The system would serve not only unincorporated settlements adjoining Cumberland but also two other cities, Harlan and Whitesburg, each 22 miles distant. It was contemplated buses would be operated regularly in Harlan and Whitesburg on runs from Cumberland and back. The opinion in that case upheld the validity of bonds issued in conformity with KRS Chapter 58, under which, although express power is given to a governmental unit to acquire a public project outside its territorial limits, there is no specific authority bestowed upon a city to own and use property inside the corporate limits of another city. Nevertheless, the City of Cumberland was given the green light to take over the bus system and provide transportation within and beyond Harlan and Whitesburg, the Court saying at page 785: "The operations beyond its (Cumberland's) limits are necessary incidents of the principal public project, and as such may be acquired and maintained as a part thereof."

Thus it may be stated generally that a municipal corporation has a governmental or public capacity and also a proprietary or private capacity and, when acting in its latter capacity, it stands on the

same footing as a private corporation exercising such powers as are lawfully permissible. Furthermore, when a city operates beyond its boundaries it carries with it none of the prerogatives of sovereignty, but functions in its extraterritorial setting simply as a private corporation. See City of Cincinnati, Ohio et al. v. Commonwealth ex rel. Reeves, 292 Ky. 597, 167 S.W.2d 709. Therefore, we are of the opinion that the City of Danville, since it proposes to act here in a purely proprietary or private manner within the purview of KRS 103.200 through 103.285, has full authority to acquire a site in Junction City and locate thereon an industrial plant for its lessee's use.

■ Appellants insist that the reason for the acquisition of the property in Junction City is not primarily for lawful municipal purposes of help to the City of Danville as a unit but is intended to extend the City of Danville's excellent credit standing for the assistance of a private corporation, a smaller city, and Boyle County as a whole. But, the statute itself states that for the purpose of encouraging "the increase of industry in *this state*" any city may issue these revenue bonds. No mention is made of benefits to be reserved only to the city as a unit. Here, it is apparent that, while surrounding areas may receive advantages from the project, the issuing city will benefit also, and in a substantial manner.

■ Throughout this controversy runs the inquiry of why Junction City does not issue the bonds itself. The mayors of the two cities testified that the bonds would sell better and command a lower interest rate if they are issued through the City of Danville. There is testimony that Danville's previous industrial bond issues have worked out well and that the city also has a staff already well trained and equipped to handle the paper work involved in keeping the records requisite to this bonding transaction.

It is with these thoughts in mind that appellants contend the proposal violates Section 179 of the Constitution of Kentucky. This provision reads in part: "The General Assembly shall not authorize any * * * city * * * to loan its credit to any corporation, association or individual * * *." Appellants submit that the identity of the concept of "municipal indebtedness" with that of "lending of credit" in the decisions we have handed down is contrary to the clear meaning of the constitutional language and that the present proposal is in truth and in fact a lending of credit. They argue that since the bonds can be sold at a lower interest figure because they bear the name of Danville, this is a lending of credit, although the bond issue has no actual relation to Danville's indebtedness. More than that, the benefits from such a "lending of credit", it is claimed, accrue directly to Junction City and to Fram, which is forbidden by Section 179.

It was held in Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80, and just recently in Bennett v. City of Mayfield, Ky., supra, that financing proposals similar to the one under discussion did not violate the foregoing constitutional provision. Simply stated, as fully reasoned out in each of these opinions, the City of Danville does not lend its credit to Junction City or to the private corporation leasing the property, because no *indebtedness* of the City of Danville is created.

■ As to whether there is sufficient unemployment to justify the public project, the evidence abundantly indicates that the Danville area is one of chronic and persistent unemployment and has even been so designated by the United States Department of Labor. The record reveals that since 1956 unemployment in the four-county area of Boyle, Garrard, Mercer and Lincoln Counties has ranged from the lowest of 8.2% to a high of 12.9%, based on employees who are covered by unemployment insurance. During the first ten months of 1961 the percentage of out-of-work persons was 10.9%. When all covered and uncovered employees are included for the first ten months of

1961, the unemployment in the four-county area was 9.2%. This same percentage evidently exists now.

The national average of unemployment is running from 4% to 6% at the present time. It was also brought out that many persons in the area have exhausted all their unemployment benefits and they and their families are on public relief. In the light of this proof, which is not in dispute, it is obvious that a factory employing several hundred people, which the one to be erected is contemplated to do, will tend to ameliorate the conditions we have detailed.

It is our considered opinion that none of the three grounds raised by appellants has merit, and that the trial court ruled correctly in this case.

Wherefore, the judgment is affirmed.