Nicholson, C. J.,
delivered the opinion of the Court.
Adams, Dixon & Pike, a firm of Attorneys at Law,., brought this suit, in the first Circuit Court of Shelby county, to recover of the City of Memphis jive thousand’ *519 dollars ($5,000), for professional services, rendered in attending to the interests of the City in certain matters of litigation in Arkansas, touching the stock owned by the City in the Memphis and Little Rock Railroad Company. The City of Memphis pleaded nil debit; and that plaintiffs were not employed; and .that they never performed any services for defendant. Issues-were made upon these pleas, and the cause submitted to a' jury, who rendered a verdict for plaintiffs for three thousand nine hundred dollars, ($3,900), after allowing a credit for eleven hundred dollars, ($1,100), for which judgment was rendered. From this judgment defendant has appealed in error.
The facts on which the questions to be determined arise, are as follows:
In 1869 the City of Memphis was a stockholder, to the amount of jive hundred and seventy-two thousand dollars, ($572,000), in the Memphis and Little Rock Railroad Company. Serious trouble sprang up as to-the legality of two rival Boards of Directors of the Railroad Company, each claiming the right to possess and control the operations of the Company; heavy litigation was pending between the rival Boards, in the results of which the City of Memphis had a deep interest, inasmuch as it was probably the largest stockholder. In this state of things, the Mayor of Memphis deemed it his duty to take prompt and efficient measures to have the interests of the City in the litigation properly represented and protected. Thereupon,, John ~W. Leftwich, the Mayor, with the approval of the City Attorney, engaged the services of C. W. Ad *520 ams, Esq., of the firm of Adams, Dixon & Pike, to represent the City at Little Rock, in Arkansas, where the litigation was pending. For this purpose the following paper was prepared and delivered to Gen. Adams:
“ Memphis, Tennesse,
Mayor’s Office, Nov. 17, 1869.
C. W. Adams, Esq., of the City of Memphis, is hereby constituted the Attorney for the City of Memphis, to represent the interest of the City in any matter touching the stock of the Memphis and Little Rock Railroad Compauy, owned by the City of Memphis. And he is hereby authorized to defend any suit that may be instituted concerning said stock, and is authorized to institute all legal proceedings in any ■court for the protection of said stock against all persons or parties.
[Seal.] JOHN W. Leftwich,
Attest: Mayor.
L. R. Richards, City Register.”
Under this authority Gen. Adams proceeded to Little Rock, and engaged actively and efficiently in the pending litigation, and so continued, to the neglect of his other professional business, until the interests of the City were successfully maintained and established. The proof is abundant, and without conflict, that the services rendered by Gen. Adams were reasonably worth five thousand dollars, ($5,000.) After the services were performed, the firm of Adams, Dixon & Pike made out their account, and presented it to the City for *521 settlement, when one Branch of the City Government voted to pay them three thousand dollars, ($3,000), and the other Branch one thousand dollars, ($1,000.) As the two Branches disagreed as to the amount, no appropriation was made, although the two Branches by their action concurred in recognizing the employment of Gen. Adams as their counsel, and their liability to pay for his services.
The counsel for the City furnished the presiding Judge with nine distinct propositions, and requested him to give them as instructions to the jury — but the Judge declined to do so, except so far as they are contained in his charge, which Avas as follows:
“You are instructed that the seal of the Corporation to an instrument constitutes prima jaeie evidence, that it was planted there by the proper authority; and that, the instrument is the act of the Corporation; and, therefore, if you find from the testimony that the defendant’s official seal is planted to the instrument read to you in evidence, and attested by the Register of the City, you will, without proof to the contrary, find the employment of the plaintiffs. If you find the employment, you will then look to the testimony, and from it determine what the services rendered were worth.”
We have seen that the proof in the case fully warranted the jury in finding, that the services rendered by Gen. Adams for the City, were reasonably worth jive thousand dollars, ($5,000.) It follows, that the case must necessarily turn upon the question, whether the evidence of the employment of Gen. Ad *522 ams by tbe City was sufficient to bind the City to. pay for his services.
It is conceded, that the presumption is, that the corporate seal was properly placed upon the warrant of attorney given to Gen. Adams. But it is said, that the instrument, with the seal upon it, was not sufficient of itself, and without reference to the question whether the Mayor had authority to make the. instrument, in behalf of the City, to bind the City.. This, adds the counsel for the defendant, is what the Court told the jury — viz: that the instrument, having the seal upon it, was conclusive upon the City.
Is this the fair interpretation of the language of the charge? After telling the jury, that the fact that the seal was attached to the instrument furnished prima facie evidence that it was placed there by-proper authority, the Court added, “therefore, if you find that the official seal is planted on the instrument and attested by the Register, you will, without proof to the contrary, find the employment of the plaintiffs.” It is obvious that the counsel has not correctly interpreted the language of the charge. By reference to the case of Levering v. Mayor &c. of Memphis, 7 Hum., 558, it is apparent that the Court, in the present case, has not laid down the law as strongly for the plaintiffs as it was stated in that case by Judge Green: He there said — “it is sufficient to observe, that the seal of a corporation to an instrument constitutes prima facie evidence that it was planted there by the proper authority, and that the instrument is the act of the corporation. In the absence of proof to the contrary, *523 this contract must be taken to be the act of the Corporation, without reference to the authority of the committee.” In that case, the Board of Aldermen had appointed a committee of three to make a contract for grading the streets. The contract was signed by only two of the committee, and one of the questions in the case was, Whether the Corporation could be bound unless all three of the committee signed the-contract? Judge Green said, it was not necessary to decide whether the execution of the contract by two-was sufficient, inasmuch as they had the seal of the Corporation annexed to the contract. As the Corporation speaks through its seal, the fact that the seal was annexed raised the presumption that it was the act of the Corporation, and this presumption would stand until overturned by contrary proof.
So, in the present case, the Circuit Judge did not assume that the Mayor had the authority to employ plaintiffs as Attorneys, but as the seal of the Corporation was annexed to the instrument, he told the jury that this fact raised the presumption, that the employment was by the Corporation, and this presumption would stand until overturned by contrary proof. He-did not say that the fact of the seal being annexed was conclusive of the employment, as was assumed in the argument. The charge was, therefore, in strict-accordance with the law, as settled in Levering v. Mayor, &c.
It is next insisted, that notwithstanding the signature by the Mayor, and the counter-signature of the Register, and the sealing of the instrument with the- *524 corporate seal, the inquiry still remained and was open, Was the contract made in pursuance of a delegated power? This is unquestionably true — it results necessarily from the fundamental principle, that the powers of a corporation must be exercised in conformity with the law of its creation. . The power conferred upon the corporation is in trust for the benefit of all .the citizens of the town or city, and must be exercised with discretion; and it must be exercised by the persons upon whom, by the act of incorporation, it is conferred — by themselves or under their express directions, as in other cases of personal confidence and trust, when judgment and discretion are required or relied on. The law was so declared in the case of Whyte v. Mayor &c. of Nashville, 2 Swan, 372. But the rule applies to corporations, as well as to other agencies, that to the powers expressly delegated are also to be added, those incidental powers which are necessary and proper to carry out the express powers. In the case of Whyte v. Mayor &c. of Nashville, Judge McKinney said: “ It is unquestionably true, that in addition to the incidental powers and capacities tacitly conferred by law upon a corporation, there may also be implied powers, in order to carry into effect the powers expressly granted, or to effect the purposes of its creation; but when the corporation is endowed, by its charter, with power to make a. specific by-law in a certain case, and for a certain purpose, its power of legislation is restricted to the case and object specified — all others being excluded by implication.”
The question in that case was, whether the Corpo *525 ration was bound by the act of the chairman of the Street Committee, in giving notice to owners of property to have pavements made. The Court held, that as there was no by-law as to the manner of giving notice, or as to the person by whom the notice should be given, the notice emanated from an irresponsible individual unknown to the charter, and upon whom even the by-laws conferred no such authority, and therefore the Corporation was not bound. This case does not decide, that if the notice had been given by an officer known to the Corporation, or by an agent designated by a by-law, it would not have been binding. It cannot, therefore, be regarded as .authority in the present case to show, that an employment, evidenced by the signatures of the Mayor and Register and the seal of the Corporation, was not binding.
The question now being considered, however, is, whether the Corporation itself, through its Board of Directors, had power to employ counsel to attend to the interests of the Corporation in another State? It may be conceded that there is no express power in the City charter, authorizing the Corporation to employ counsel for the specific purpose of prosecuting or defending suits outside of the State. But there is express authority for contracting generally — such a power is essential to the existence of the Corporation and is inherent in it. The power, however, can be legitimately exercised only in regard to matters which pertain to the trust created by the act of incorporation. Whatever powers are necessary and proper to the faithful ■ execution of these trusts, are necessary inci *526 dents to the granted powers. These incidental powers are to be exercised by the Board of Aldermen, and with discretion, for the benefit of all the citizens of the town or city. In carrying into effect the powers expressly granted, or to effect the purposes of its creation, there must be also implied powers in the corporation, which are to be exercised under the discretion of the Trustees of the Board of Mayor and Aider-men.
The power to employ counsel whenever and wherever, in the discretion of the Board, it is necessary for the Corporation to be represented by counsel, for the preservation and protection of its interests, is necessarily implied, to enable the Corporation to effect the purposes of its creation, and to execute faithfully the trust committed to it. In the present case, the City owned a large amount of stock in a Railroad enterprise. It was the duty of the Board to protect this stock — -just as much so as it was its duty to protect the property of the City, within its corporate limits. If the Board believed that the value or the existence of this stock was in jeopardy, from rival Boards of Directors claiming to possess and control the operations of the road, it was the duty of the Board, as Trustees, to interpose for its preservation and protection — and if they believed that this could be best effected by employing counsel and sending them to Little Rock, to look after and attend to the interests of the City in regard to stock, the implied power so to employ counsel was clear and unquestionable.
This doctrine as to the exercise of implied powers *527 by corporations is necessarily confined to cases, in which their exercise is necessary in carrying out the legitimate purposes of its institution.
We have been referred- to a number of cases in which it is argued that a different rule of law from that laid down by us, has been declared. The first is the case of Butler v. City of Charleston, 7 Grey, 14. Butler sued for services as an attorney rendered to the City Council of Charleston. The services were admitted, but the proof showed, that he was employed by four Aldermen, by an act in the country and wholly unofficial — there was no vote or act of the City Council, or either Branch, ratifying the act of the four Aldermen. It was decided, that he was not employed by the Corporation. This decision has no application to the present case, for the reason, that plaintiffs here rely on a contract of employment signed officially by the Mayor and Eegister and sealed with the seal of the Corporation,, which employment was subsequently recognized and ratified by the action of both Branches of the City Government.
The next case is Donovan v. Mayor &c. of New York. This was an action for work and materials. The Court say, “the parties aggrieved have no remedy against the Corporation. They were employed in contravention of the policy and terms of the Statute, and they can not invoke the aid of the courts to enforce an unlawful agreement. They could not contract with the City, except through its authorized agents, and they are chargeable in law with notice of the limitations of official authority, imposed by general laws.” *528 Clearly this case can have no bearing upon the case at bar.
The case of Carroll v. St. Louis, 12 Missouri, 444, decides, that the Mayor of St. Louis had no power to bind the Corporation to pay its regular Attorney additional compensation, beyond his regular salary, for-services in causes originating before the Recorder in St. Louis. The Court say: “The services sought to be recovered were rendered by the City Attorney, at the suggestion of the Mayor, and were either rendered in his capacity of City Attorney, and therefore remunerated by the salary which the law had fixed, or they were rendered voluntarily at the instance of the Mayor, who had no authority to bind the Corporation in the case supposed.” This decision has no bearing on the case before us.
The ease of Hodges v. The City of Buffalo, 2 Denio, 110, decides that “the Common Council of Buffalo have no authority to furnish an entertainment for the citizens and guests of the City, at the public expense.” This has no application to the present case.
In the case of Clark v. City of Des Moines, 6 Amer. Law Reg., 146, it was held, that “municipal corporations have and can exercise only such powers as are expressly granted, and such incidental ones as are necessary to make these powers available, and are essential to effectuate the purposes of the corporation, and these powers are strictly construed. And agents, officers, or even a city council of a municipal corporation, cannot bind the corporation by any act which transcends their lawful or legitimate powers. And *529 this rule applies to the issue 'of negotiable, as well a» non-negotiable, evidences of debt.” These holdings-are in strict harmony with the views already expressed by' us.
It was anciently the law, that corporations could do nothing except by deed. After successive. relaxations of this technical rule, it was finally held, that though corporations could not contract directly, except under their corporate seal, yet they might by mere-vote or other corporate act, not under their corporate seal, appoint an agent, whose acts and contracts, within the scope of his authority, would be binding on the corporation. Rex v. Biggs, 3 Pierre Williams, 419.
In the case of Bank of Columbia v. Patterson, 7 Cranch, 306, Judge Story said: “It would seem to be a sound rule of law, that wherever a corporation is acting within the scope of the legitimate purposes of its institution,, all parol contracts made by its authorized agents, are express promises of the corporation ; and all duties imposed on them by law, and all benefits conferred at their request, raise implied promises, for the enforcement of which an action may well lie.”
It is settled by many adjudged cases in New York, that it is not necessary, in order to charge a corporation for services rendered, that the Directors, at a formal meeting, should either have formally authorized or ratified the employment. For many purposes, the officers and agents of the corporation may employ persons to perform services for it, and such employment, within the scope of the agent’s or officer’s duty, binds *530 the corporation. In other cases, if an officer employs a person to perform a service for the corporation, and it is performed with the knowledge of the Directors, and they receive the benefit of such service without objection, the corporation is liable upon an implied assumpsit: Abbott’s Dig. Law of Corporations, 242, where the cases are cited.
Though the contract is one which was originally unauthorized, yet if it was within the scope of the charter and has been executed by the other party, if the Corporation have received the consideration for their promise, they are not at liberty to repudiate their obligation, but the other party may enforce it. Bissell v. S. & U. Indiana R. R. Co., 22 N. Y., 258: De Groff v. Amer. Linen Thread Co., 24 Barb., 375.
The result is, that the Circuit Judge committed no error in his general charge, and none in his refusal to charge the several propositions submitted by defendant’s counsel.
The judgment is, therefore, affirmed.