## Board of Councilmen of City of Frankfort et al. v. Pattie et al.

(Decided December 7, 1928.)

(Rehearing Denied February 15, 1929.)

F. M. DAILEY for appellants.

W. C. MARSHALL for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a judgment of the Franklin circuit court enjoining the mayor and board of councilmen of the city of Frankfort from making any contract to lease that portion of the building owned by the city, known as the Opera House, for a term of 20 years to begin at the expiration of the present lease.

The Opera House is now leased to the Frankfort Amusement Company for a term of 5 years, which expires some time during the year 1930. In the spring of 1928 the Frankfort Amusement Company notified the city that the building was in a bad state of repair and unsafe for the lessee's patrons, and requested it to make such repairs as would render the Opera House tenantable. Upon receipt of this communication the matter was referred to the hall committee, composed of four councilmen for investigation. This was the committee to which was usually referred any matters affecting the Opera House. The committee reported that a number of substantial repairs were needed, including the installation of a new heating system, which alone would cost approximately $7,000. The city did not have sufficient funds to make the necessary repairs, and upon the suggestion of the lessee that it would immediately make the repairs at its own expense, if the city would extend its lease, the board of councilmen authorized the hall committee to have prepared plans and specifications covering

the needed repairs and to report to council with its recommendations. On August 13, 1928, the hall committee filed its report which contained the following recommendations:

"First. That the mayor for and on behalf of the city be directed to advertise in the Kentucky State Journal for a period of ten (10) days for bids on lease of Opera House, to take effect on the 19th day of December, 1930, or sooner if the successful bidder is able to make satisfactory arrangements with the present lessee. The successful bidder to make at his or its expense said improvements and repairs according to the plans and specifications filed herewith as part hereof, in consideration of an annual rental upon a lease on the Opera House for a term of twenty-five (25) years from December 19, 1930.

"Second. We recommend that sealed bids be delivered not later than 12 o'clock a. m., to the city clerk on August 27, 1928, to be transmitted by him to the city council.

"Third. We recommend further that the council reserve the right to reject any and all bids or to accept the highest and best bid."

The report of the committee was approved, and thereupon the mayor caused to be published in the Frankfort State Journal the following notice:

"Sealed bids will be received by the undersigned mayor of the city of Frankfort, at the city clerk's office, until 12 o'clock m. on August 27, 1928, for the lease of the Opera House for twenty years, from December 19, 1930, at an annual rental to be paid in equal monthly installments, the successful bidder in addition thereto to make needed repairs at his own expense, in accordance with plans and specifications now on file in the city clerk's office. Said improvements to be made when possession is acquired, or sooner if arrangements can be made with the present lessee.

"A certified check payable to the city treasurer for $5,000.00 must accompany each bid.

"The right is reserved to reject any and all bids, and to accept the highest and best bid.

"August 16, 1928.
"(Signed)     C. T. COLEMAN, Mayor."

On August 24, 1928, three days before the bids were to be received, the appellees, William R. Pattie and Alice Pattie, suing in their own behalf and in behalf of all other citizens and taxpayers of the city of Frankfort, brought this action against the mayor and board of councilmen of the city of Frankfort, in which they asked that a temporary restraining order be granted, and that upon final hearing the defendants be permanently enjoined from receiving or considering any bids for the lease of the Opera House for a term of 20 years, or at all, upon the terms mentioned in the advertisement then appearing in the Frankfort State Journal.

It is alleged in substance in the petition that there is no reason for leasing the Opera House under a contract to begin so far in the future, and that the members of the board of councilmen are not authorized to enter into a contract for the lease of the building to begin after the expiration of their terms of office, and in no event to make a lease for a period of 20 years from December 19, 1930. It is further alleged that the repairs had been suggested by the present lessee, and the plans and specifications referred to in the advertisement had been prepared by or at the instance of this lessee, and are of such a nature as to forestall and prevent fair competition. It is further alleged that W. J. Hulette, one of the councilmen, is a stockholder in the Frankfort Amusement Company, the present lessee, and is interested in the procurement of the lease by that company.

While the appellants were enjoined from accepting any bid, two bids were submitted and were offered in evidence upon the final hearing of the case. One bid was submitted by Lee & Sparks, who are stockholders of the Frankfort Amusement Company. They offered to pay a rental of $452.50 per month in advance and to make all improvements called for according to plans and specifications then on file in the city clerk's office at a cost of not less than $40,000. The other bid was submitted by the Phœnix Amusement Company, which offered to lease the Opera House for a period of 20 years from December 19, 1930, and to pay therefor the sum of $192,240, payable in monthly installments of $801 in advance, and in addition to the rental to expend such sum as might be necessary to render the Opera House perfectly safe and comfortable.

It appears that the lower court granted the relief sought by the appellees upon the theory that the contract

proposed to be entered into was in violation of section 164 of the Constitution, which provides that no municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding 20 years.

In Capital Amusement Co. v. Board of Councilmen, 210 Ky. 622, 276 S. W. 528, we held that the city of Frankfort, in the leasing of its Opera House for public entertainments, was exercising a private proprietary power or municipal function, as distinguished from a purely governmental function. The leasing of its Opera House by the city is not the granting of any franchise or privilege within the meaning of section 164 of the Constitution, nor is it the making of any contract in reference to any franchise or privilege. The city has the same rights in and control over the Opera House owned by it that any individual would have in and over any property owned by him. It may sell or lease property owned by it in its primate proprietary capacity, so long as no fraud attaches to its contracts. If it can sell its property, it necessarily follows that it can lease such property, and, since section 164 of the Constitution has no application, there is no limitation upon the term for which the lease may be made.

In Willis v. Boyd, 224 Ky. 732, 7 S. W. (2d) 216, the fiscal court of McCracken county undertook to give to Boyd by written contract for a period of 50 years the exclusive right to take sand and gravel from the bed of the Ohio river in the county north of the thread of the stream. Section 4702, Kentucky Statutes, as amended by chapter 184 of the Acts of 1926, provides that:

> "Each county in this commonwealth shall have the right to dispose of the unappropriated lands lying therein, not otherwise provided for, in the manner hereinafter directed, and hold the proceeds for county purposes, unless the same has been by law otherwise appropriated. And all that portion of the bed of the Ohio river, lying north of the thread of the stream, except such portions as may be accretions to islands privately owned, is hereby declared to be vacant and unappropriated property; and same may be held, leased and used for county purposes, as herein provided."

By the same amendment the following was added to section 4703 of the Kentucky Statutes:

"All that portion of the bed of the Ohio river, lying north of the thread of the stream, except such portions as may be accretions to islands privately owned, is to be held and used for county purposes by the respective counties of this commonwealth bordering on said Ohio river; and the county court of each county may use, let or lease said river bed for county purposes, upon such terms and conditions as to it may appear to be beneficial to said county."

In the Boyd case it was held that the rights thus granted were profits a prendre, and that a contract in reference thereto could not be made for a period exceeding 20 years. There the Legislature did not give the county unlimited disposition of the unappropriated portions of the river bed, but stipulated that such land should be held and used by it for county purposes, and restricted its power of disposition to "letting or leasing for county purposes." Here the city owns the Opera House, without any restriction upon its power of disposition, and the rule announced in the Boyd case is not applicable.

In Capital Amusement Co. v. Board of Councilmen, supra, it was held that, while a council may, when dealing with the private proprietary affairs of the city, make a contract to begin in futuro and at a time when it is no longer in office, yet such action on the part of the council, when no satisfying explanation is offered for the need of such action so long in advance, is a potent circumstance to be taken into consideration in determining whether or not the contract is being fraudulently obtained. There the Capital Amusement Company was seeking to secure a renewal of its lease, which did not expire for nearly 2 years, and no need was shown for the renewal of the lease so far in advance. In the instant case it appears that substantial repairs are needed to make the Opera House safe and tenantable, and most of the needed repairs are not of such a character as the present lessee is required to make under its lease. The repairs will require the expenditure of a large sum of money and the city has no funds available to make the repairs.

In advertising for bids before entering into any contract the board of councilmen followed the suggestion on that point in the opinion in Capital Amusement Company

v. Board of Councilmen, supra, and appellees have failed to point out any circumstances touching the action of the members of the council that would authorize a finding that such action was induced by fraud. It is insisted that W. J. Hulette, one of the councilmen, is a stockholder of the Frankfort Amusement Company, and is interested in having that company obtain the new lease; but the question as to whether or not a contract between the city and a corporation of which a councilman is a stockholder would be valid is not before us. This is an action to enjoin the mayor and board of councilmen from leasing the Opera House to any one at this time, and we are not called upon to anticipate who the eventual lessees may be.

The plans and specifications for the proposed repairs, referred to in the pleadings and briefs of counsel, are not in the record, and we are unable to say whether they are unreasonable, or of such a nature as to tend to discourage the bidding by others than the Frankfort Amusement Company.

It is also suggested that the mayor has no authority to advertise for bids for a lease for a term of 20 years when he was directed to advertise for bids for a term of 25 years. The mayor has no authority to enter into the contract on behalf of the city, but all bids must be submitted to the council, which has the right to reject any or all of them, and, if it accepts a bid for a lease for a term of 20 years, it will be its action ultimately and not the action of the mayor.

For the reasons indicated, the judgment is reversed, with directions to dismiss plaintiffs' petition.