Azbill *et al. v.* Lexington Mfg. Co., Inc., *et al*

(*Jackson,* April Term, 1949.)

Opinion filed June 10, 1949.

W. H. Denison, Lexington, for complainant.

Herman Chaityn, New York City, Joe A. Appleby, Lexington, for defendants.

Mr. Justice Tomlinson delivered the opinion of the Court.

Since this is an appeal from the decree of the Chancellor sustaining a demurrer to the bill, the allegations of that bill, conclusions excepted, will be stated as the facts.

Complainants, appellants here, are taxpayers of the town of Lexington. That municipality and the Lexington Manufacturing Company, Inc., a Tennessee corporation, are the defendants. The prayer of the bill is for a decree adjudging void two contracts contemporaneously entered into between the two defendants. Identical demurrers were filed by each defendant, whereby it is asserted that (1) no equity is shown on the face of the bill and (2) the complainants are not entitled to any relief.

The town of Lexington owns a tract of land on which there is a building formerly used as a school gymnasium, but abandoned as to such use prior to the time that the contracts in question were executed. The governing body of Lexington enacted an ordinance authorizing the execution of a lease contract of this property to Lexington Manufacturing Company ''for industrial purposes,'' together with the granting of an option to this company for the purchase of said property, all on the terms stated in the lease and option subsequently executed on November 21, 1946. There was no enabling legislative act which proposed to specifically authorize Lexington to make either of these contracts.

This lease rented the property in its original condition to Lexington Manufacturing Company for a monthly rental of $215.63 for the year commencing September 1, 1946, and for the remaining ten years of the lease at a monthly rental of $150. It was stated in the lease that one inducement influencing the town is to relieve unemployment among its people. The business of Lexington Manufacturing Company is not reflected by the record, other than that it is an ''industrial'' manufacturing concern.

The municipality obligated itself to erect a factory on the lot, the gymnasium to be a part of such factory. It is to be built according to specifications in the lease, and the town is obligated to expend not less than $35,000 nor more than $75,000 in the construction and the installation of specified facilities. Building operations are to commence at such time as may be mutually agreed upon by the parties and construction is to be completed within a specified time.

Lexington Manufacturing Company leases this factory, when constructed, for a period of ten years from the date of construction completion at the annual rental of the $150 per month above mentioned, plus one-tenth annually of the total cost expended in construction.

The town is to build at its expense necessary sewerage and a road leading from a street to the rear of the factory. Also, it is to construct at its expense a parking lot near the factory for the use of the people who work there.

By the terms of the option agreement contemporaneously executed, there is granted to Lexington Manufacturing Company the right to buy the property for a consideration which equals the cost of constructing the factory plus the sum of $18,000. That $18,000 is the value of the property before construction. This option continues in effect during the life of the lease. In making payment of the purchase price, if the option is exercised, Lexington Manufacturing Company is to be given credit for all rents which it had paid under the lease agreement except rent for the first year.

Since the lease is for a period of ten years after the factory is completed and the annual rental to be paid from that time is $1800 plus one-tenth of the cost of the construction, it results that the credits to be given Lexington Manufacturing Company on the purchase price, if it awaits the expiration of the lease in exercising the option to buy, will exactly equal the purchase price. That is, the town has agreed to give its credit to this private corporation for the construction of the factory, repayable in annual installments without interest. In any event, such credit is extended to the date of the exercise of the option, if exercised prior to the expiration of the ten year lease. The town further obligated itself to assess the

property for taxes at the value of $1.00 annually for a period of ten years after it is purchased.

If this private corporation elects not to buy, then Lexington will have between $35,000 and $75,000 invested in an industrial factory.

The position of the complainants is that the ordinance and contract is invalid in Article 2, Section 29 of our Constitution, providing that "the credit of no . . . Town shall be given or loaned to or in aid of any . . . corporation, except upon an election to be first held by the qualified voters of such . . . Town, and the assent of three-fourths of the votes cast at said election." Such election was not held, nor was there an enabling act authorizing this town to hold such election.

The case as stated during oral argument led to a comment from the bench that *Patton* v. *City of Chattanooga,* 108 Tenn. 197, 65 S. W. 414, might be controlling, contrary to the insistence of appellants. Subsequent examination of the bill revealed that *Patton* v. *City of Chattanooga* is not applicable. In that case the challenged act did not increase the tax burden of complainants, nor were they affected by the questioned act in a manner different from any other resident of the municipality.

The only source from which this municipality can procure the money to pay for this construction is from taxes on property within its boundaries. Complainants own such taxable property. They will, therefore, be burdened with an increase of taxation resulting from this proposed expenditure.

"The right of taxpayers to resort to a court of equity to enjoin . . . municipal authorities from transcending their lawful powers, . . .. is conceded by all the authorities if such conduct would impose a

burden of taxation, the imposition of such burden upon taxpayers is not common to citizens who pay no taxes.'' *Reams* v. *Board of Mayor & Aldermen of City of McMinville*, 155 Tenn. 222, 225, 291 S. W. 1067, 1068. So, these complainants have the right to maintain this bill and for at least some of the relief sought if the proposed expenditure is illegal.

A few jurisdictions have sustained arrangements like the one we have here on the plausible theory that the municipality is acting in a governmental capacity in that the purpose of the expenditure is to decrease unemployment and thereby decrease unemployment's twin offspring, hunger and crime. *Albritton* v. *City of Winona*, 181 Miss. 75, 178 So. 799, 115 A. L. R. 1436. However, a great majority of the Courts hold such an arrangement to be beyond the constitutional power of a municipality or legislature. Quite a number of cases to this effect are collected 112 A. L. R., commencing at page 571 under this statement of the annotator:

''The decisions apparently are agreed on the general rule that encouragement or promotion of a specific industrial enterprise carried on by private ownership is not a public purpose for which taxes may be imposed or public money appropriated.''

This State is definitely committed to the majority rule just stated. In *Ferrell* v. *Doak*, 152 Tenn. 88, 275 S. W. 29, 46 A. L. R. 590, the Legislature undertook to authorize the town of Lebanon to issue bonds for the purpose of procuring funds with which to build a box manufacturing plant to be leased to a private corporation. At the outset of its consideration of the constitutionality of that Act this Court said:

"However commendable the proposed movement it must be and is frankly conceded that public funds to be provided by taxation may be expended only for a public purpose, and, unless the purpose in view may be reasonably so classified, the act conflicts with article 2, section 29, of our Constitution." 152 Tenn. Page 90, 275 S. W. page 29, 46 A. L. R. 590.

And in adjudging the Act to be unconstitutional the opinion concluded with the statement that it is "well settled that taxation cannot be imposed for the purpose of establishing, aiding, or maintaining private business enterprises whose sole object is the private emolument of the proprietors, no matter how beneficial to the community such enterprises may be." 152 Tenn. Page 96, 275 S. W. page 31, 46 A. L. R. 590.

*Ferrell* v. *Doak, supra,* is controlling here. That case makes it clear that the town of Lexington is without authority to expend the tax money in the construction of this factory, or to give its credit to this private corporation without first having been authorized to submit and then submitting the matter to and procuring the approval of the voters as required by Article 2, Section 29 of our Constitution. Its agreement to construct and pay for this factory is, therefore, invalid and unenforceable. The Chancellor erred in not so holding and in sustaining the demurrer.

The assignment of error directed to the proposition that Lexington Manufacturing Company be required to vacate the original lot and gymnasium thereon owned by the town of Lexington is not, *per se,* tenable. The town having properly and legally acquired ownership of this realty and the use to which it had been devoted having been abandoned, it had the authority either to

sell this property or to rent it to a private concern for such amount as is commensurate with its value and use. Whether the parties will elect to go on with the rent of the original property, in view of our holding hereinabove with reference to the construction of the factory thereon, is a matter for their determination.

Reversed and remanded for further appropriate proceedings consistent with this opinion with costs adjudged against the appellees.

All concur.