## Faulconer et al. v. City of Danville et al.

July 14, 1950.

Opinion Filed July 28, 1950.

Kendrick S. Alcorn, Judge

James G. Begley, for appellants.

Henry Jackson, Wyatt, Grafton & Grafton, and Smith & Leary, for appellees.

Per Curiam.

It seems to the Court that the judgment herein insofar as it affects the rights of the parties to the action is concerned should be and it is hereby affirmed.

The opinion will be prepared and delivered at a later date.

STANLEY, COMMISSIONER—Affirming.

The declaratory judgment sanctions the proposal of Danville to acquire a site and erect a building to be leased to a manufacturer. To finance the project the City proposes to issue bonds to the amount of $300,000 to be paid, principal and interest, from the rents. KRS 103.200 to 103.280, Ch. 58, Acts of 1946, authorize any city to take such action to procure an "industrial building," which is defined as "any building or structure suitable for and intended for use as a factory, mill, shop, processing plant, assembly plant or fabricating plant, to be rented or

leased to an industrial concern by the city by which it is acquired.''

The purpose of the enactment is stated to be, ''In order to promote the reconversion to peace-time economy, to relieve the conditions of unemployment, to aid in the rehabilitation of returning veterans and to encourage the increase of industry in this state.''

This present experiment under the statute is the first to reach this court.

An ordinance provides for the project in its entirety in accordance with the terms of the statute. It includes the issuance and the terms of what are to be known as ''City of Danville Industrial Build'ng Revenue Bonds.'' They have serial annual maturities over a period of 25 years, but are subject to earlier redemption after 1955 at the option of the City. The ordinance establishes a special ''Bond Fund,'' or sinkng fund, and embraces also the approval of the execution of a ''Contract of Lease and Rent'' with the General Shoe Corporation. The contract will provide for the payment of annual rentals for the period ending June 30, 1975, sufficient to pay the bonds and the cost of maintaining and insuring the building, the same to be deposited in the special fund and administered by the City. The contract provides further for the option of an additional term of 25 years at a rental of $1 plus an amount sufficient to pay for the maintenance and preservation of the property.

The preamble of the ordinance is in substance that the City of Danville is located in the center of an agricultural section of the state; that the economy of the city and its citizens and inhabitants is dependent to a large degree upon agriculture, and there is not a sound and proper balance between agriculture, commerce, and industry; that adequate opportunities for industrial employment are not available in Danville; that unless such opportunities are provided, citizens both now and in the future will be required to move to other communities to obtain employment; and that the appellee, General Shoe Corporation, having been thoroughly investigated, appears to be sound and stable and to have a good reputation for good citizenship, labor relations, and labor policies in other communities where its plants are located and with ample resources, thereby furnishing every reasonable assurance of its ability to make the prescribed

rental payments and observe the other commitments set forth in its proposal.

All these factual conditions are fully proved by evidence.

The question is raised whether or not owning industrial property and leasing it to a private manufacturer is a public purpose within the powers of a municipality. Powers of a municipality, derived from the legislature, are broadly classified as governmental or political and proprietary or private. The former are those functions which are essential to the existence of the city as an arm of the state government—the exercise of a part of the sovereign power within the incorporated territory. The latter embrace acts or functions of a local character which are voluntarily assumed, mainly for the city's own purposes and benefit, or those which are ordinarily exercised by private persons, and are not within the police power. Board of Councilmen v. White, 224 Ky. 570, 6 S. W. 2d. 699; Board of Trustees v. City of Newport, 300 Ky. 125, 187 S.W.2d 806; 37 Am. Jur. 114, 120.

We take it to be unquestionable that in the exercise of proprietary powers there must be some relation to the public convenience or welfare; in short, a project public in nature rather than engaging in private business. Otherwise it is ultra vires. 37 Am. Jur., Municipal Corporation, Secs. 120, 132; cf Lancaster v. Clayton, 86 Ky. 373, 5 S. W. 864; Carman v. Hickman County, 185 Ky. 630, 215 S. W. 408. Within the scope of granted municipal powers, the General Assembly, in an independent act of 1946 (now Ch. 58, KRS), has defined a "public project" for which revenue bonds may be issued, to mean "any lands, buildings or structures, works or facilities suitable for and intended for use as public property for public purposes or suitable for and intended for use in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works or facilities, and shall also include existing lands, buildings, structures, works and facilities, as well as improvements or additions to any such lands, buildings, structures, works or facilities." KRS 58.010.

In enacting the statute under which the present venture is undertaken, the legislature deemed the acquisi-

tion and ownership by a city of an "industrial building" to be a public project. The legislative determination of what is a public purpose will not be interfered with by the courts unless the judicial mind conceives it to be without reasonable relation to the public interest or welfare and to be without the scope of legitimate government. The concensus of modern legislative and judicial thinking is to broaden the scope of activities which may be classed as involving a public purpose. 37 Am. Jur., Municipal Corporations, Sec. 132. It reaches perhaps its broadest extent under the view that economic welfare is one of the main concerns of the city, state and the federal governments. This is manifested by the great bulk of recent social security programs of the nation and the state. Of special pertinence are those providing for unemployment insurance and security, thus decreasing what the Tennessee Supreme Court calls "unemployment's twin offspring, hunger and crime." Azbill v. Lexington Manufacturing Co., Tenn. Sup., 221 S. W. 2d 522, 524. With reference to this concern of government, Mr. Justice Stone, later Chief Justice, writing for the Supreme Court, in holding constitutional an Alabama statute levying taxes and providing for their use, said: "The evils of the attendant social and economic wastage permeate the entire social structure. Apart from poverty, or a less extreme impairment of the savings which afford the chief protection to the working class against old age and the hazards of illness, a matter of inestimable consequence to society as a whole, and apart from the loss of purchasing power, the legislature could have concluded that unemployment brings in its wake increase in vagrancy and crimes against property, reduction in the number of marriages, deterioration of family life, decline in the birth rate, increase in illegitimate births, impairment of the health of the unemployed and their families and malnutrition of their children." Carmichael v. Southern Coal & Coke Co., 301 U. S. 495, 57 S. Ct. 868, 875, 81 L.Ed. 1245, 109 A.L.R. 1327. See also Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651; Shaw v. Kentucky Unemployment Compensation Commission, 297 Ky. 815, 181 S.W.2d 697.

All these social security enterprises—including low-cost housing, old age insurance and special care of the blind and needy children—all, are illustrative of the modern concept of public purpose. They are in their

nature preventive of consequences always recognized as subjects and objects of public concern.

That the location of a manufacturing establishment is a public advantage is specifically recognized by the Kentucky Constitution, Sec. 170, which expressly empowers the General Assembly to authorize any city or town to exempt such industries from municipal taxation for five years, "as an inducement to their location." The objectives of the venture—no longer an experiment —are opportunity for employment and the discouragement of migration of citizens from their home community, with the resultant effect upon the business and well-being of all the people.

We need not concern ourselves here with the question whether or not the ownership and leasing of an industrial plant is such a public purpose as would authorize the exertion of the taxing power or the appropriation of tax revenues in its acquisition. The earlier policy of extending public aid to private corporations got out of bounds and led to the adoption of several provisions of the Constitution limiting or prohibiting the same. Sec. 171, 177 and 179 are of particular pertinence.

The courts of the country are of divided opinion, though the majority hold that the encouragement and promotion of a specific industrial enterprise under an arrangement similar to the present where it involves the taxing power is beyond the constitutional power of a legislature or a municipality. 30 Am. Jur., Mun. Corp., Sec. 402; Annotations, 14 A.L.R. 1165, 112 A.L.R. 571, 115 A.L.R. 1436. Unlike the statute providing for the acquisition and development of public projects generally by the revenue bond plan (Ch. 58, KRS) the statute under which this project is being developed contains no provision permitting the use of general funds or revenues to finance the same, or the payment of any bonds issued therefor. The statute, the ordinance and the bonds themselves, all, state the security and source of payment to be the rents. This is in accord with many revenue bonds issued under authority of different statutes and declared by this court not to be obligations of the governmental unit issuing them, whether state, county or school district. Though the objectives of the present enterprise may embrace some elements of gov-

ernmental function, the ingenious plan of paying for the property must be deemed to be a proprietary venture. It is this condition and the entire absence of either power or purpose that distinguishes the cases cited by the appellant, particularly, Azbill v. Lexington Mfg. Co., Tenn. Sup., 221 S.W.2d 522.

We find nothing in the limitations of the constitution with respect to the powers of government pertaining to the use of tax revenues in opposition to the statute, the ordinance or the plan of this project.

Another question raised is that the scheme constitutes a device for the lending of credit of the municipality to a private corporation, in violation of Section 179 of the Constitution, which declares, "the General Assembly shall not authorize any county or subdivision thereof, city, town or incorporated district * * * to loan its credit to, any corporation, association or individual, except * * *."

We think the foregoing consideration, that the venture does not involve the use of tax revenues, presently or in the future, answers this suggestion. It is expressly stated in the statute, ordinance and bonds, that they do not constitute an obligation of the city. Nor is there any lending of credit in other form. There is only the lending of the city's name and its commitment to render the described services and to lease the property for a consideration, which is so valuable that the city is acquiring and will have title to property, unencumbered by a mortgage or lien, of the value of $300,000. The public treasury cannot be opened under the present statute, ordinance or contracts. The city's hand collects and dispenses the rents. It becomes a trustee but not a creditor or guarantor.

Section 164 of the Constitution provides that no municipality shall be authorized or permitted to grant any franchise or privilege or make any contract in reference thereto for a term exceeding 20 years. The proposed contract of rental, as stated, is for a definite term of 25 years with an option to renew for an additional like period.

Once having reached the conclusion that the owning and leasing of an industrial plant is a proprietary and not governmental function, this limitation of the Con-

stitution fails of application. The City of Frankfort has for many years owned a building used for city offices and a theater used for public entertainment. We have held that in the ownership and management of the theater the city exercises a proprietary function and that it is at liberty to make any contract with reference thereto that any individual would have with his property, hence, that a lease of the theater is not the grant of any franchise or privilege within the meaning of Section 164 of the Constitution, and a contract of lease extending for a period longer than 20 years was held good. Board of Councilmen of City of Frankfort v. Pattie, 227 Ky. 343, 12 S.W.2d 1108. Likewise, that the lease of city wharf property does not partake of the properties of a franchise or privilege, as the term is used in Section 164, requiring advertisement and public sale as a condition. Inland Waterways Co. v. City of Louisville, 227 Ky. 376, 13 S.W.2nd 283. Indeed, we have gone further and held that a fiscal court under its general powers had authority to lease a portion of the courthouse lawn for a term of 25 years on which the lessee should erect a building on the leased premises in which to conduct a newspaper and lunch stand. This was upon the theory that the power to sell includes the power to lease. Burns v. Moore, 307 Ky. 167, 209 S.W.2d 735.

The judgment, however goes further in one declaration than we think necessary or justified. It declares the property to be owned by the city is exempt from taxation because its ownership is a public municipal function. The property is outside the city limits and any taxation would be by the state, county and educational district. Since none of these taxing units of government are parties to the case, they are, of course, not bound by the judgment should the question ever be raised.

We are of opinion that the judgment is otherwise correct and it is accordingly affirmed.