Holly *v.* City of Elizabethton *et al.*

(*Nashville,* December Term, 1950.)

Opinion filed August 31, 1951.

HALLIE K. RINER, of Elizabethton, for plaintiff.

ROY H. BEELER, Attorney General, THOMAS H. GOODMAN and ALLISON B. HUMPHREYS, JR., Assistant Attorneys General, CECIL SIMS of Nashville, OSCAR M. FAIR, JR., and GEORGE F. DUGGER, both of Elizabethton, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Acting under the authority supposed to be given by Chapter 137 of the Public Acts of 1951, the defendant municipality of Elizabethton authorized the issuance of $4,000,000 of "Industrial Building Revenue Bonds" for the purchase of a site and the erection thereon of an "industrial building" for lease to defendant corporation, Textron, Inc., to be used by Textron, Inc., for manufacturing, industrial and commercial purposes.

Complainant, by this suit instituted in accordance with the requirements of the Declaratory Judgment Law, Code, Section 8835 et seq., asserted and insisted that this statute is unconstitutional in that (1) it undertakes to authorize a municipality to expend public funds for a purpose that is private rather than public, citing *Ferrell* v. *Doak*, 152 Tenn. 88, 275 S. W. 29, 46 A. L. R. 590, decided in 1924, and in that (2) contrary to the provision of Article 2, Section 29 of our Constitution it purports to authorize a municipality to extend credit to a private corporation without the approval of three-fourths of the votes cast in an election held for that purpose, citing *Azbill* v. *Lexington Mfg. Co.*, 188 Tenn. 477, 221 S. W. (2d) 522.

This appeal is from the decree of the Chancellor sustaining the Act in its entirety.

The statute defines an "industrial building" to be a factory, mill, processing or fabricating plant. In as much as four walls, floors and roof cannot accurately be termed "an industrial building", it follows that "an industrial building" within the reasonable meaning of the Act is a building with such fixtures, machinery, etc. attached to, and becoming a part of, the building as will create a building that is equipped for the conduct of a manufacturing, milling, processing or fabricating business.

The Act authorizes municipalities of the State to lease such building to an industrial concern for such a length of time and upon such terms as will produce a rental sufficient to meet the payment of principal and interest on these bonds as the same become due, and to pledge for such payment the income derived from such rental, and to mortgage the building for the purpose of securing the payment of the bonds. Each bond is to have plainly

printed upon its face that its holder has no legal right to compel the exercise of the taxing power of a municipality for the payment of any part of said bonds, and that it is not an indebtedness of the municipality within the meaning of any constitutional or statutory provision.

The Act is likewise sufficiently broad to authorize the municipalities to provide for payment out of the rents of any taxes or other such indebtedness for which the City might become liable by reason of its ownership and rental of this industrial building. Moreover, it would not be unlawful for the municipality to provide in the lease for the payment by the lessee of such possible debts of a municipality as a part of the rentals to be paid.

If bonds are issued only in accordance with the above mentioned provisions of the statute, and the lease of the industrial building thereby procured is only in accord with the aforestated provisions of the Act, then it necessarily follows that no tax could ever be levied by the municipality, or moneys received from taxes could ever be used, for the purpose of paying these bonds, or for any debt for which the City might become liable by reason of its ownership and rental of such building. Therefore, *Ferrell* v. *Doak*, supra, is not applicable to the procuring and leasing of an industrial building in the manner above stated. This is because the holding in *Ferrell* v. *Doak* is only that a municipality may not levy taxes or use moneys thereby procured for a purpose that is private rather than public. Under the above stated method of acquiring and leasing an industrial building and retiring the bonds no tax money is or can be used.

Bonds issued and a lease made only in accordance with the above mentioned provisions of the statute do not constitute a lending of the credit of the municipality to a private corporation. The money is borrowed through

the use of these bonds for the purpose of acquiring or building an industrial building which the City shall continue to own after the rental income has paid for it and which building shall be leased to a private industrial concern for such length of time and for such rentals as are necessary to pay these bonds, principal and interest, as the same become due. Further, the issuance of the bonds conditioned as above stated was authorized by three-fourths of the voters of Elizabethton in an election held for that purpose, in accordance with the provisions of the statute. For each of these two reasons *Azbill* v. *Lexington Mfg. Co.*, supra, is not in point.

The bonds proposed to be issued by the City of Elizabethton for the acquiring of this industrial building are in accordance with the above mentioned provisions of the statute. The lease into which it has entered with Textron, Inc., is for such length of time and for a sum sufficient to pay these bonds, principal and interest, as they become due. Any foreseeable taxes for which a municipality may become liable by reason of its ownership and rental of this building are likewise to be paid from the rental to be received or by the lessee as a part of its lease contract.

Chapter 137 declares that its purpose in authorizing the procuring, paying for, and leasing of such an industrial building in the manner above stated is for the purpose of encouraging the increase of industry within the State, thereby reducing the evils attendant upon unemployment. Without regard to the effect, if any, such a recitation has in determining the constitutionality of this statute, it is a commonly known fact that the industries authorized by Chapter 137 are of incidental public benefit to the municipality where located, at least to the extent that they will furnish employment to a substantial number of its inhabitants.

52

Thus, the question we have here is whether our Legislature may constitutionally authorize the municipalities of this State to acquire through the issuance of bonds an industrial building and lease the same to a private industry for conducting within or near that municipality of a private industrial business when (1) the statute withholds from the municipality any authority to levy taxes or to use tax moneys for the payment of the bonds or any obligation of the City attendant upon the ownership and rental of such building, and (2) when, for the payment of such bonds, the municipality shall enter into a lease for such length of time and on such terms as that the rentals received will (a) pay these bonds, principal and interest, as the same become due, and (b) will pay all reasonably foreseeable obligations for which the City may become liable by reason of its ownership and leasing of this building, and (c) when the building continues thereafter to be property of the municipality, and (3) it appearing that the procuring of such an industry will furnish employment to a substantial number of people residing in and around that municipality.

The question is new to the Courts of our State and arises from the enactment of a statute that seems to be of comparatively recent origin in this country. The brief of appellees makes reference to similar statutes of Florida, Kentucky and Alabama which were sustained by their respective Courts of last resort. See *State* v. *City of Tallahassee*, 142 Fla. 476, 195 So. 402; *Faulconer* v. *City of Danville*, 313 Ky. 468, 232 S. W. (2d) 80; and *Opinion of the Justices No. 120*, 254 Ala. 506, 49 So. (2d) 175. The Illinois case of *Poole* v. *City of Kankakee*, 406 Ill. 521, 94 N. E. (2d) 416 is another case in which such a statute was held to be a valid enactment.

In the end, however, we must look to our own Constitution rather than to a decision of another State, based upon its Constitution, to determine whether Chapter 137 of our 1951 Public Acts violates our Constitution. It is neither contended nor perceived that this statute offends the Federal Constitution.

■ In so considering the question, the Court must be controlled by the fact that our Legislature may enact any law which our Constitution does not prohibit, and the Courts of this State cannot strike down one of its statutes unless it clearly appears that such statute does contravene some provision of the Constitution. *Joyner* v. *Priest,* 173 Tenn. 320, 326, 117 S. W. (2d) 9.

Unless a statute, under attack as to its constitutionality, expressly or by unavoidable implication violates some specific provision of our Constitution it cannot be annulled "upon supposed natural equity, the inviolate rights of free men" or because the Court thinks that "it is opposed to a spirit supposed to pervade the constitution, but not expressed in words", and whether such "statute is contrary to the genius of a free people is a question for the legislature, and not the courts". *Henley* v. *State,* 98 Tenn. 665, 682, 41 S. W. 352, 355, 1104, 39 L. R. A. 126.

■ Along with the fundamental and important rules immediately above stated it must be kept in mind that from the inception of our State Government it has always been held that the Legislature has the authority to create municipal corporations and vest it with such authority as does not violate the Constitution of the United States or of the State. *Hope* v. *Deaderick,* 27 Tenn. 1, 8-9, but keeping in mind also that a municipal corporation "is instituted for public purposes only". *Mayor, etc.* v. *Fisher,* 1 Shannon, 345, 356.

The promotion of the industry authorized by the hereinbefore mentioned provisions of Chapter 137 is clearly of incidental public benefit to the municipality where such industry may be located, at least to the extent that it will furnish employment to a substantial number of its inhabitants. It is, then, at least incidentally for a public purpose, though it results in the promotion of and gain to a private corporation.

There is nothing in the Constitution which forbids our Legislature from authorizing a municipality to promote a private industry in the manner authorized by the aforementioned provision of Chapter 137, since those provisions do not authorize the use of moneys raised by taxation for the accomplishment of the incidental public purpose intended. Therefore, for emphasis, as in *Nichol v. Mayor and Aldermen of Nashville,* 28 Tenn. 252, and *City of Memphis* v. *Memphis Gayoso Gas Co.,* 56 Tenn. 530, 538, "it may be asked, is there any wrong in this? Is there anything against the public good in this? Is there anything against law in this? Surely not."

For the reasons stated, the Court concludes that the aforementioned provisions of Chapter 137 of the Public Acts of 1951 are not unconstitutional. These provisions of that statute legally authorize the City of Elizabethton to issue the proposed bonds for the acquiring by purchase or construction of an industrial building as defined by that statute, and to lease it in accordance with the above mentioned provisions of the statute to some private industrial concern.

In reaching the conclusion above stated, we have left out of consideration the question of whether subsection (1) of Section 4 of Chapter 137 must be construed as authorizing by necessary implication a municipality to levy taxes for the purpose of acquiring such industrial

building. We have also not considered whether this subsection is unconstitutional in so far as it may authorize by implication the levying of such tax. These two questions with reference to subsection (1) are pretermitted because those questions are not before the Court in this case in which no taxes are to be levied for the acquirement, etc. of this industrial building, or for the payment of bonds issued for that purpose.

█ If there should arise a case in which it becomes necessary to determine these two questions immediately above stated, and if in that case it should be held that said subsection (1) does by necessary implication authorize the levying of such a tax and that to that extent this subsection is unconstitutional, then that feature of subsection (1) may be elided without affecting the constitutionality of the remainder of the Act because the Act contains a very liberal severability clause, and after such elision there would be left a complete law capable of enforcement and fairly answering the principal object of its passage. *Davidson County* v. *Elrod*, 191 Tenn. 109, 232 S. W. (2d) 1.

The original complainant also seeks a declaratory judgment as to whether certain provisions contained in the lease agreement between the City of Elizabethton, lessor, and Textron, Inc., lessee, are authorized by the aforementioned and above sustained provisions of Chapter 137. The Chancellor indulged this prayer in part and rejected it in part. Those provisions of the lease upon which the Chancellor so declared under this prayer of the bill are the same provisions which it has been necessary for this opinion to construe in considering the constitutionality of the Act. Hence, the same result is reached by both Courts, but in a different manner.

56

■ However, neither the lessor nor the lessee is contending that any provision of the lease or in the face of the bonds is unauthorized by those provisions of Chapter 137 which this Court has sustained. There is, therefore, no controversy between interested parties. It results that the bill is not one which may be sustained at the instance of complainant by this Court for declaratory relief. *Hill State Bank & Trust Co.* v. *Chew*, 167 Tenn. 71, 66 S. W. (2d) 989.

The decree of the Chancellor will be modified so as to pretermit determination of the two questions pretermitted in this opinion with reference to subsection (1) of Section 4 of the Act. As so modified, that decree will be affirmed.

■ The Chancellor did not adjudge cost in his Court. Some legal difficulties are encountered in adjudging the costs in this case against the City of Elizabethton and Textron, Inc. However, the record discloses that this is a friendly lawsuit within ethical limitations and that both the City and Textron, Inc. wanted the constitutionality of this Act tested in so far as it affected the industrial building, bonds and lease mentioned, and cooperated for the accomplishment of that end. The suit is clearly for their benefit. So, we are of the opinion that equity within the law will permit the assessment of all costs in all Courts against these two defendants, notwithstanding the legal obstacles which may exist. Code Section 9115. The costs will be so adjudged.

All concur.